UNITED STATES of America, Appellee,

v.

**David Melton DRINKARD, Appellant.**

No. 89–2408.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 16, 1990.

Decided April 4, 1990.

Rehearing Denied May 10, 1990.

Robert G. Duncan, Kansas City, Mo., for appellant.

Ronda R. Reems, Kansas City, Mo., for appellee.

Before McMILLIAN, Circuit Judge, HEANEY, Senior Circuit Judge, and FAGG, Circuit Judge.

HEANEY, Senior Circuit Judge.

At issue on this appeal is whether the district court erred in failing to suppress the fruits of an airport search of David Melton Drinkard's luggage. The district

court held that the encounter between the agent and Drinkard was consensual and that Drinkard consented to the search of his luggage. Although the district court's conclusion that this encounter was purely consensual is erroneous, we affirm its decision not to suppress the evidence because the finding that Drinkard's consent was freely and voluntarily given is not clearly erroneous.

## I. THE NATURE OF THE ENCOUNTER

The district court held that the encounter between Drinkard and the agent, until the agent arrested Drinkard, was consensual. We disagree.

Drug Enforcement Administration (DEA) agent Michael Scalise was informed by a confidential informant that one Wayne Smart would be bringing cocaine to Kansas City from Houston by air on the morning of March 24, 1989. The informant told the agent that Wayne Smart was a black male, 6'3" tall and weighed approximately 200 pounds. The informant said that he had received the information from Wayne Smart's ex-wife.[1]

Subsequently, the confidential informant again contacted Scalise and told him that he had incorrectly described Smart. Smart was instead a white male, 6'3" tall, weighing approximately 200 pounds, approximately 40 years old, with thick brown hair, who would be traveling with another person.

Scalise contacted DEA agent Carl Hicks and told him about Smart. Scalise picked up a third DEA agent, went to the Kansas City Airport, and met Hicks and a county sheriff.

The four officers, all in plain clothes, stood directly in front of and approximately 5 to 25 feet from the door through which the passengers were walking into the terminal and observed a passenger who

---

1. This informant had been supplying information to Agent Scalise for approximately two weeks prior to March 23, 1989. During those two weeks the informant was in regular contact with Scalise supplying information on an un-

related suspected drug dealer. Scalise testified that he thought the informant was reliable, but there appears to be no prior contact between Scalise and Smart's ex-wife.

matched the latest description of Smart. Later, this passenger was identified as Smart. Smart walked into the public aisleway of the terminal, hesitated, looked around, and then was joined by a second man, later identified as Drinkard, who had deplaned 20 to 25 feet behind Smart.

Drinkard was carrying a black garment bag and a black duffel bag. Smart and Drinkard walked together toward the door of the terminal, and Agent Hicks followed them. Drinkard paused inside the terminal, and Smart walked outside alone. Agent Hicks walked outside with Smart and stood with him on the sidewalk, and Smart turned to Hicks and asked what terminal he was in. Hicks answered. Next, Drinkard walked out of the terminal and joined Smart. Hicks then approached Smart and Drinkard, identified himself as a police officer, showed them his badge, and asked if he could talk to them.

Smart and Drinkard stopped, placed their bags on the sidewalk, and said that they would talk to Agent Hicks. The other officers surrounded them, standing between 15 and 20 feet away. Hicks asked where they were going. Smart answered that he was returning to his house in Overland Park, Kansas, and Drinkard said that he was returning to his home in Valley Falls, Kansas. Hicks then asked to see their tickets and Drinkard complied, but Smart said he had left his on the airplane. Drinkard's ticket was in his name and had been purchased with cash. Hicks then asked if they had any identification. Both complied by showing their driver's licenses.

Hicks again showed his badge and told them that the DEA was watching for drugs being smuggled through the airport. Hicks asked if they had any drugs in their bags, and both of them answered "no." Next, Agent Hicks asked if he could look in their bags for drugs, and both of them answered "yes."

Hicks first looked through Smart's briefcase and travel bag and found no contraband. He did, however, notice that Drinkard was fidgeting, pacing around, and appeared nervous. Hicks again asked the defendant if he could look in his bags.

Drinkard hesitated and then nodded his head up and down, saying "go ahead."

Hicks searched Drinkard's duffel bag, finding a Crown Royal Canadian Whiskey box. He opened the box, finding a large quantity of a white crystalline substance appearing to be cocaine in a plastic bag. Hicks placed the plastic bag on the sidewalk in front of Drinkard and waited for a reaction. There was a period of silence for about ten seconds, and then one of the other agents asked Drinkard if the plastic bag was his. Drinkard denied that the bag was his and said he had never seen it before. Hicks arrested Drinkard.

■ An encounter between a government agent and a citizen is no longer consensual, or—in other words—transformed into a *Terry*-type detention when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he or she was not free to go. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980); *United States v. Nunley*, 873 F.2d 182, 184–85 (8th Cir.1989); *United States v. Sadosky*, 732 F.2d 1388, 1392 (8th Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984).

■ We believe that a reasonable person in Drinkard's position, in light of all the circumstances, would not have believed that he or she was free to go. The interview incorporated more than a mere request for identification. *See Florida v. Royer*, 460 U.S. 491, 501, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) (mere request for identification does not constitute seizure); *United States v. Tavolacci*, 895 F.2d 1423 (D.C. Cir.1990) (same). Agent Hicks identified himself twice as a DEA agent. Three other agents had surrounded Drinkard, standing 5 to 20 feet away. Hicks stated that he and other agents were attempting to stop the drug trade that was entering through the Kansas City airport. Hicks specifically asked Drinkard if he had any drugs. He asked Drinkard to search his luggage. Hicks never told Drinkard that he was free to leave or free not to consent to the search. *See Nunley*, 873 F.2d at 185 n. 2 (an agent does not have to inform a detain-

ee that he or she may leave, but the absence of such notice contributes to the reasonable perception that a detainee is being restrained).

It is certain that at this point, in light of all the circumstances, a reasonable person in Drinkard's position would not have felt free to turn and walk past Agent Hicks, leaving the entrance of the airport. *See id.* at 184–85 (under nearly identical facts, we held that a reasonable person would not have felt free to leave).[2] Accordingly, this encounter was transformed into a limited *Terry*-type investigative detention.[3]

## II. REASONABLE SUSPICION OF CRIMINAL ACTIVITY

■■■ A limited investigative detention of a citizen by a government agent is illegal unless that agent has reasonable suspicion that the citizen has committed or is about to commit a crime. *See, e.g., Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Upon our review of all the facts as known at the time of the detention, we believe that Hicks had reasonable suspicion that Drinkard had committed or was about to commit a crime. In coming to this conclusion, we rely, for the most part, on the suspicion created by the tip given to Scalise by the confidential informant rather than the argument that Drinkard's personal characteristics create sufficient suspicion because they belong to a government-defined drug profile.[4] The tip specifically identified Smart and the flight on which he was arriving. The tip also related the fact that Smart would be traveling with a companion. Finally, the informant stated that Smart would be transporting specific amounts of drugs. It was reasonable for Hicks to suspect that Drinkard might also be involved in the present commission of a crime.

## III. THE SEARCH OF DRINKARD'S LUGGAGE

■■■ The government conceded at oral argument that it did not have probable cause to search Drinkard's luggage.[5] Furthermore, the Supreme Court has stated

2. The government contends that *Nunley* is distinguishable from the instant case because the defendant in *Nunley* was a woman and the encounter took place inside the airport rather than at the exit. We doubt that a gender-based distinction made by the government has any relevance in the application of the reasonable person standard. Furthermore, the government fails to furnish factual support for the conclusion that a woman, in this instance taking all the circumstances as a whole, is more likely to be intimidated than a man. This argument appears couched in western mythology rather than reality. As to the distinction in location, the government fails to point to any practical difference that might suggest that the reasonable person, in otherwise identical circumstances, located at the exit of the airport is more likely to feel free to leave than the reasonable person located in the airport.

More importantly, the government incorrectly focuses on precise details, giving each detail independent significance, rather than focusing on the effect of all the circumstances. *See Michigan v. Chesternut,* 486 U.S. 567, 569–70, 108 S.Ct. 1975, 1977, 100 L.Ed.2d 565, 569 (1988) (the test needs to be imprecise because it is designed to assess the coercive effect of police conduct as a whole).

3. In light of all the circumstances, particularly the fact that the agents did not have physical possession of Drinkard or his property and the public nature of this encounter, we are unwilling to say, as a matter of law, that this encounter gave rise to the coercive quality of custodial interrogation or de facto arrest. *Florida v. Royer,* 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

4. So-called drug profiles are relevant to a determination of reasonable suspicion, but they tend not to be particularly probative. For example, in this case, the government asserted at oral argument that the fact that Drinkard was observed deplaning 25 feet behind Smart but the two later met in the concourse fits a drug profile while admitting that the reason Drinkard was behind Smart was because he stowed his bag further back in the plane. Such conduct is not out of the ordinary for the everyday and vacation traveler. Yet, the government would have us hold that Drinkard's deplaning conduct gives rise to reasonable suspicion.

5. The text of oral argument reads as follows:
Judge Heaney: [W]hat you are saying is that reasonable suspicion turned into probable cause sufficient to justify seizing and opening the bag?
Assistant United States Attorney: No.
We agree with the government's conclusion that it did not have probable cause to search the luggage. Furthermore, we believe that exigent circumstances necessary to justify a warrantless search were not present.

that it is illegal for a law enforcement officer to open and search the luggage of a person based on reasonable suspicion of criminal activity. *United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983).[6] Consequently, the propriety of the warrantless search by Agent Hicks of Drinkard's luggage depends on the validity of Drinkard's consent. *See Florida v. Royer*, 460 U.S. at 497, 103 S.Ct. at 1323–24.

The government bears the burden of proving that a consent to search was valid. *Id.* The test to determine the validity of a person's consent is whether, in light of all the circumstances, the consent was given voluntarily and without coercion. *United States v. Turpin*, 707 F.2d 332, 334 (8th Cir.1983).

In *Florida v. Royer*, the Supreme Court held that officers' investigatory procedures can escalate to such a point that the coerciveness of the procedures will vitiate consent. 460 U.S. at 503, 103 S.Ct. at 1327. In that case, the totality of the circumstances—the officers had the suspect's ticket, they had his identification, they had seized his luggage, and they had moved him from the concourse to a small room resembling a closet—indicated that the suspect's consent was not voluntary. In the instant case, the investigatory procedures are somewhat less intrusive—Hicks returned Drinkard's identification, Hicks had not seized Drinkard's luggage, and the investigatory procedures took place at the entrance to the airport. Drinkard's participation in this investigation was not, however, consensual. Hicks had detained Drinkard, specifically questioning Drinkard as to his involvement with drugs, and a reasonable person in Drinkard's position would not have felt free to leave.

If we had been the original factfinder, we may well have found the coercive conditions of this *Terry*-type detention sufficient to vitiate Drinkard's consent. The district court held, however, that Drinkard's consent was freely and voluntarily given.

Our review in this case is not de novo. Because consent is a question of fact, we review the district court's finding under a clearly erroneous standard, and under that standard, the finding that Drinkard's consent was freely and voluntarily given is supported by substantial evidence.

Accordingly, the district court did not err in failing to suppress the fruits of the search of Drinkard's bag at the airport.

---

**6.** Although the Supreme Court has moved somewhat away from the bright-line warrant requirement based on probable cause in certain limited circumstances, the need for the general rule is plain in this and similar cases. No risk of losing the evidence or other "special enforcement needs" existed to make the warrant requirement impracticable. *E.g., New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986). Hicks could have detained Drinkard or his bags until a "dog-sniff" of the bags was completed. *United States v. Sokolow*, —— U.S. ——, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). (Dogs that can "sniff" for contraband are available at the Kansas City airport. *United States v. Painter*, 480 F.Supp. 282 (W.D.Mo.1979)). An affirmative result would have provided probable cause. Unlike many of the searches permitted by the Supreme Court in recent years, this search was solely related to a criminal investigation rather than employment matters or educational administration. *E.g., National Treasury Employees Union v. Von Raab*, —— U.S. ——, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989); *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). In addition, a warrant would have assured Drinkard that the agents' intrusive search and seizure of him was justified by law. Furthermore, a warrant would have put Drinkard on notice to the limitations of the search and his constitutional rights. Finally, a detached magistrate would have been in a better position to evaluate the evidence of criminal behavior than the district court or this Court is after the distortions created by time and the fact that Drinkard was actually committing a crime come into play.