UNITED STATES of America, Appellant,

v.

Chareou Caprice CONDELEE, Appellee.

No. 89–2342WM.

United States Court of Appeals, Eighth Circuit.

Submitted April 9, 1990.

Decided Oct. 3, 1990.

---

Linda L. Sybrant, Kansas City, Mo., for appellant.

Christopher C. Harlan, Kansas City, Mo., for appellee.

Before JOHN R. GIBSON, BOWMAN and MAGILL, Circuit Judges.

MAGILL, Circuit Judge.

The government appeals the district court's order granting defendant Chareou Caprice Condelee's motion to suppress evidence as the result of a *Terry* stop, unsupported by reasonable suspicion, involving the seizure of the defendant and her personalty. The government asserts the evidence was improperly suppressed because DEA agents possessed a reasonable, articulable suspicion of ongoing criminal activity to support Condelee's detention in the Kansas City International Airport (KCI). We agree and reverse.

## I.

On March 3, 1989, at 6:58 a.m., Carl B. Hicks, a special agent with the Drug Enforcement Administration (DEA), and two detectives from the Platte County sheriff's department, all dressed in plain clothes, were at KCI observing passengers deplaning from Braniff Flight 650 from Los Angeles, as part of the ongoing KCI Drug Task Force. Agent Hicks had been informed that the Crips and the Bloods, two Los Angeles street gangs, were using "sharply dressed black female couriers" to smuggle drugs through KCI. Chareou Caprice Condelee deplaned, wearing a brown dress and a dark leather jacket, and carrying a purse and a garment bag. Condelee walked quickly, looking straight ahead, across the concourse from the arrival gate to the exit door.

Agent Hicks approached Condelee as she waited at the curbside taxi stand and requested permission to speak with her. Condelee assented. Agent Hicks then identified himself as a police officer and displayed his badge. As they conversed, Condelee walked back inside the terminal. Agent Hicks followed. Condelee stopped at a trash can inside the terminal. Agent Hicks and Condelee continued to converse. In response to Agent Hicks' questions, Condelee was very specific about her itinerary. Condelee's oneway ticket was purchased in her own name for cash through a travel agent several days before the flight. Agent Hicks then asked Condelee for identification. A nervous Condelee, with hands shaking and an accelerated pattern of speech, placed her purse on the trash can, tilted the purse toward her for obvious concealment purposes, and removed her wallet. Several items accidently fell out of the purse and into the trash can. After showing Agent Hicks her California driver's license, Condelee put the wallet back in her purse, once again tilting it so that Agent Hicks could not observe the contents. Condelee then placed the purse on the trash can, and Agent Hicks heard a noise indicating that something heavy was in the purse.

Agent Hicks displayed his badge a second time and informed Condelee that he was a DEA agent watching for drugs being smuggled into KCI. Agent Hicks asked Condelee if she brought drugs from Los Angeles. She denied having any drugs. Condelee then consented to a search of her garment bag. Agent Hicks searched the bag but did not discover any drugs. Agent Hicks then asked Condelee if she had any drugs in her purse. She again denied having any drugs. When Agent Hicks requested permission to search her purse, Condelee told him he would have to get a search warrant. Condelee then told Agent Hicks that she wanted to go to the bathroom with her purse. Agent Hicks responded that Condelee could not take her purse to the bathroom but could remove any necessary items. Condelee asked to make a phone call. Agent Hicks and the two detectives accompanied her to the phone bank. At this point, Agent Hicks asked Condelee if there was something in her purse that would get her in trouble. Condelee began to cry. Agent Hicks asked Condelee if there was cocaine in her purse, and she replied, "Yes." Agent Hicks seized Condelee's purse and placed her under arrest.

Condelee was escorted to Agent Hicks' car, read her *Miranda* warnings, and transported to the Platte County sheriff's department. While in the car, Condelee

made an inculpatory statement regarding her possession of cocaine. Later at the sheriff's department, Condelee executed a consent to search form. The ensuing search of the purse resulted in the discovery of cocaine wrapped in a woman's girdle.

On March 14, 1989, a grand jury indicted Condelee for knowingly and intentionally possessing with intent to distribute 500 grams or more of a substance containing cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). On April 14 and again on July 11, Condelee moved to suppress the evidence seized and the statements made. On July 17, 1989, the magistrate recommended that the evidence be suppressed. On July 27, 1989, the district court issued an order adopting the magistrate's findings, over the government's objections, and granting Condelee's motion to suppress. The district court subsequently denied the government's motion for reconsideration. The government appealed.[1] We reverse.

## II.

■ The parties agree that the initial consensual encounter between Agent Hicks and Condelee was transformed into a *Terry* stop when Agent Hicks showed Condelee his badge for a second time, told her he was watching for drugs being smuggled into KCI, and asked if she had any drugs, because a reasonable person would believe she was not free to leave. *See United States v. Drinkard*, 900 F.2d 140, 142–43 (8th Cir.1990). The government argues on appeal that Agent Hicks possessed a reasonable, articulable suspicion of ongoing criminal activity based on objective facts at the time of the stop and, therefore, Condelee's motion to suppress should have been denied. We review *de novo* the legal issue of whether Condelee's detention violated the fourth amendment. *See United States v. Hernandez*, 854 F.2d 295, 297 (8th Cir. 1988).

■ In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court held that "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Id.* at 30, 88 S.Ct. at 1884. The police may detain luggage briefly where there is reasonable suspicion that the luggage contains narcotics. *United States v. Place*, 462 U.S. 696, 706, 103 S.Ct. 2637, 2644, 77 L.Ed.2d 110 (1983).

■ The Supreme Court has required that an officer "be able to articulate something more than an 'inchoate and unparticularized suspicion or hunch.'" *United States v. Sokolow*, 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883). The fourth amendment requires "some minimal level of objective justification" to support a *Terry* stop. *INS v. Delgado*, 466 U.S. 210, 217, 104 S.Ct. 1758, 1763, 80 L.Ed.2d 247 (1984). The existence of reasonable suspicion is determined by the totality of the circumstances. *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed.2d 621 (1981). The Supreme Court has recognized that there could be "circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot," *Reid v. Georgia*, 448 U.S. 438, 441, 100 S.Ct. 2752, 2754, 65 L.Ed.2d 890 (1980) (per curiam), and, therefore, facts consistent with innocent travel taken together may amount to reasonable suspicion if they have probative value (i.e., sufficient to warrant consideration). *Sokolow*, 109 S.Ct. at 1586. The relevant inquiry is the degree of suspicion that attaches to particular types of noncriminal acts. *Id.* at 1587.

■ Whether certain facts viewed as a whole establish reasonable suspicion must be determined by viewing them in light of a law enforcement officer's experience and familiarity with the practices of narcotics couriers. *United States v. Nunley*, 873 F.2d 182, 185 (8th Cir.1989); *United States v. Sadosky*, 732 F.2d 1388, 1393 (8th Cir.), *cert. denied*, 469 U.S. 884, 105 S.Ct. 254, 83 L.Ed.2d 191 (1984); *United States v. Wall-*

---

**1.** Condelee has been released on bond pending the outcome of this appeal.

*raff,* 705 F.2d 980, 988–89 (8th Cir.1983). Agent Hicks had seventeen years of experience as a DEA agent with substantial experience in drug trafficking investigations.

At the time of the *Terry* stop, Agent Hicks had observed Condelee deplane at KCI, a use city, from an early morning flight from Los Angeles, a source city especially for early courier dispatch. Agent Hicks had received a tip that two Los Angeles street gangs were using "sharply dressed black female couriers" to smuggle drugs through KCI. Condelee, a black woman, was stylishly dressed. Condelee was traveling with only carry-on luggage, a garment bag and a purse. Condelee walked quickly and directly, looking straight ahead, across the concourse to the exit door. During the ensuing consensual encounter, Condelee was very nervous (her hands shook and her voice was accelerating), and she attempted to conceal the contents of her purse from Agent Hicks. When she placed her purse on the trash can, it made a loud noise.

We believe Condelee's appearance, demeanor and actions prior to the time of detention, viewed from the perspective of a veteran drug enforcement agent, created a reasonable, articulable suspicion that Condelee had committed or was about to commit a crime. Agent Hicks' reasonable, articulable suspicion, arising from specific, articulable facts coupled with rational inferences drawn in light of his experience, supported the *Terry* stop.

When Agent Hicks requested permission to search her purse, Condelee refused to consent. Agent Hicks refused to allow Condelee to take her purse to the bathroom. The district court found that a seizure of a suspect's purse should be analyzed under a heightened standard requiring more than reasonable suspicion. In *United States v. Pantazis,* 816 F.2d 361 (8th Cir.1987), we held that reasonable suspicion of criminal activity was sufficient to justify the seizure of a suspect's shoulder bag during a *Terry* stop. *See also United States v. Sanders,* 631 F.2d 1309, 1321 n. 6 (8th Cir.1980) (McMillian, J., dissenting), *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946,

67 L.Ed.2d 114 (1981) (the expectation of privacy in a purse does not prevent seizures to avoid destruction of evidence while a warrant is prepared). Therefore, we believe the district court applied an incorrect standard for the suspicion necessary to support the seizure of Condelee's purse during the *Terry* stop. Under *United States v. Place,* Agent Hicks could briefly seize Condelee's purse based on reasonable suspicion.

Since the *Terry* stop was supported by a reasonable, articulable suspicion, Condelee's admission that her purse contained cocaine was validly obtained and should not have been suppressed. This admission in turn constituted probable cause for her arrest. Condelee was arrested and read her *Miranda* warnings. Therefore, the inculpatory statements made by Condelee in the car following her arrest as well as the consent form executed for the search of her purse were validly obtained and should not have been suppressed.

We believe the district court's conclusion that no reasonable, articulable suspicion existed evolved from an erroneous view of applicable law, *see United States v. Lewis,* 738 F.2d 916, 920 (8th Cir.1984), *cert. denied,* 470 U.S. 1006, 105 S.Ct. 1362, 84 L.Ed.2d 383 (1985), resulting in the error of granting Condelee's motion to suppress. For the foregoing reasons, we reverse and remand for further proceedings in accordance with this opinion.

JOHN R. GIBSON, Circuit Judge dissenting.

I respectfully dissent and would affirm the judgment of the district court granting Condelee's motion to suppress.

I agree with most of the court's analysis today and differ only as to whether Agent Hicks had a reasonable, articulable suspicion to support the *Terry* stop, which occurred when he showed Condelee his badge for the second time. At that point the facts known to Hicks that would support such a stop were: (1) the tip that Los Angeles street gangs were using "sharply

dressed black female couriers," (2) that Los Angeles was a source city, and that the early flight from Los Angeles had been used by couriers in the past, and (3) that Condelee's ticket had been purchased for cash.

On the other hand, other facts were contrary to a reasonable suspicion. These included: (1) that although she purchased it with cash, Condelee bought her ticket from a travel agency in her own name several days before the flight, and (2) that she carried identification in her real name.

Other facts are, to me, inconclusive. A stylishly dressed black female alighting from a plane with a garment bag and purse, and walking directly to the exit door looking straight ahead, is not sufficient to raise suspicion, even when considered in the context of those facts above that might support some suspicion. That Condelee became very nervous during the consensual encounter, and that her purse made a loud thud when she placed it on the trash receptacle, are also not unexpected. The magistrate found that Condelee placed her purse on the trash receptacle and tilted it toward her body while she reached inside to obtain her driver's license, and that she did so again when returning the license to her purse. Agent Hicks testified that she appeared to be deliberately attempting to hide the contents of her purse from him. The magistrate concluded that it would be more awkward and unnatural to attempt to remove a driver's license from a waist-high purse without tilting it than to do so in the manner followed by Condelee. I do not find it unusual that an individual, when asked for a driver's license, produces it in a manner that keeps the contents of a purse or wallet from the view of others. The magistrate's interpretation of the loud thud was evidently the product of some knowledge of the contents of women's purses. Our appellate function forbids us from finding facts, and I can only conclude that his views are not clearly erroneous.

We have had many cases exploring the outer limits of airport stops and searches, and I believe the facts of this case are just beyond those limits. In *United States v.* *White*, 890 F.2d 1413 (8th Cir.1989) (Magill, J. concurring), cert. den., —— U.S. ——, 111 S.Ct. 77, 112 L.Ed.2d 50 (1990), this court held that there was no reasonable, articulable suspicion for a *Terry* stop on facts somewhat similar to those before us now. *White* placed particular reliance on *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), in which the individual's nervousness when talking to the officer was discussed, and the circumstances for the most part were held to " 'describe a very large category of presumably innocent travelers.' " *See* 890 F.2d at 1417 (quoting *Reid*, 448 U.S. at 441, 100 S.Ct. at 2754).

Agent Hicks had no advance information of the specific identity or description of the alleged courier, other than the more general statement that the courier might be a "sharply dressed black female," and no specific information that the courier would be on this particular flight. The DEA agents did not receive any specific tip giving an indication of definite identity, such as occurred in both *United States v. Drinkard*, 900 F.2d 140, 141 (8th Cir.1990) (confidential informant provided DEA officials with the date of arrival, flight information and a description of the defendant), and *United States v. Nunley*, 873 F.2d 182 (8th Cir.1989). *Nunley* involved a specific tip as to the flight on which the defendant would arrive, as well as the fact that she had purchased her ticket for cash immediately before departure, and that she carried no luggage at all. Condelee's situation did not involve any of these factors. Nor was there a continuation of a consensual encounter that resulted in discovery of incriminating objects, *see United States v. Campbell*, 843 F.2d 1089, 1091 (8th Cir. 1988) (a completely consensual search produced a plastic bag containing cocaine), or a combination of factors leading to an articulable suspicion, *id.* at 1093 ("the facts collectively [must] establish reasonable suspicion").

The combination of factors for Agent Hicks to consider in this case was at best ambiguous and was far beyond any pattern we have found to be sufficient in the past. I believe that it was simply not enough and

that the ruling of the district court suppressing this evidence should be affirmed.