UNITED STATES of America, Appellee,

v.

Oneil F. STEPHENSON, Appellant.

UNITED STATES of America, Appellee,

v.

Ian J. GOHAGEN, Appellant.

UNITED STATES of America, Appellee,

v.

Christopher G.
CONSTANTINE, Appellant.

UNITED STATES of America, Appellee,

v.

Raymond A. EBANKS, Appellant.

UNITED STATES of America, Appellee,

v.

Michael J. SWABY, a/k/a Tuffy
Ricky, Appellant.

Nos. 89–2472, 89–2473, 89–2513,
89–2514, 89–2566.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1990.

Decided Jan. 25, 1991.

Rehearing Denied in No. 89–2472
March 6, 1991.

Rehearing and Rehearing En Banc
Denied in No. 89–2514 March 22, 1991.

James R. Hobbs, Kansas City, Mo., for Stephenson.

Kenneth C. Hensley, Independence, Mo., for Gohagen.

John W. Franklin, Kansas City, Mo., for Constantine.

Claudia J. York, Kansas City, Mo., for Ebanks.

Leonard L. Meyer, Independence, Mo., for Swaby.

Peter M. Ossorio, Kansas City, Mo., for appellee.

Before FAGG and BEAM, Circuit Judges, and ROY,* Senior District Judge.

ROY, Senior District Judge.

The appellants in these consolidated appeals were members of a cocaine base distribution ring, which operated in Kansas City, Missouri and adjacent areas in 1987 and 1988. On November 15, 1988, an indictment was returned against appellants charging them with conspiracy to distribute 50 grams or more of cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The indictment alleged that the conspiracy spanned from "on or about May 28, 1987 until on or about August 23, 1988." Appellants were taken into custody during the months of November and December 1988. All five entered pleas of not guilty and were detained pending trial.

Appellants were tried jointly before a jury in the United States District Court for

---

* THE HONORABLE ELSIJANE T. ROY, Senior United States District Judge for the Eastern District of Arkansas, sitting by designation.

the Western District of Missouri.[1] On March 3, 1989, after ten days of trial, the jury returned a verdict of guilty as to each appellant upon the charge of conspiracy to distribute 50 grams or more of a mixture and substance containing cocaine base. The sentences imposed upon appellants range from 22 years to 33 years. All filed separate appeals and are represented by separate counsel. Appellants raise, both collectively and individually, eleven grounds for reversal of the judgments entered against them. Finding no prejudicial error as to any of the points raised, we affirm the judgment of conviction as to each of the five appellants.

## I. BACKGROUND

In June 1987, appellant Christopher Constantine opened a drug house in Kansas City, Missouri. The actual delivery of the drugs and receipt of the money was done by others, including appellants Oneil Stephenson, Ian Gohagen and Michael Swaby. During the summer and fall of 1987, the group opened and controlled the operation of several other crack houses in the Kansas City area. Appellants Stephenson and Swaby, and another individual now deceased, routinely worked together in the delivery of the drugs and picking up of money. The members of this ring made a practice of arranging their currency, usually in denominations greater than one dollar, in folded increments of $100, secured by a rubber band into stacks of $1,000. Appellant Raymond Ebanks initially joined the ring as a "worker" selling cocaine base. In 1988, he continued to sell, working for Gohagen. At the peak of appellants' enterprise, receipts from drug sales were in the range of $10,000 to $15,000 daily, involving trash bags full of money.

In November 1987, officers from the Kansas City, Missouri Police Department and special agents from the Bureau of Alcohol, Tobacco and Firearms ("ATF") and the Immigration and Naturalization Service raided three of appellants' suspected crack houses, and in December 1987 raided another. Although appellants narrowly escaped apprehension in these raids, a number of workers were arrested and a quantity of drugs, guns and cash was seized. A group of the conspirators fled to a motel in Kansas City, Missouri, then traveled by airplane to New York City. Having been alerted by the Kansas City police, law enforcement officers at LaGuardia Airport approached appellants Gohagen, Ebanks and a female companion and, following a consent search, seized $6,190 of suspected drug money.

During the spring of 1988, certain ATF agents developed a cooperating witness by the name of Donald Dixon. Dixon had run afoul of the law by making certain false statements in the purchase of a total of 33 firearms in the State of Kansas. Pursuant to a plea agreement, Dixon agreed to assist the authorities in their investigation of appellants. Dixon introduced a Kansas City, Missouri police detective, Donald Birdwell, to Gohagen and, on three occasions in May and July 1988, Birdwell purchased crack from Gohagen. On June 23, 1988, another detective bought crack from Stephenson. Although it was never fully carried out, Dixon also assisted the ATF agents in an operation in which they sought to trade machine guns to Gohagen and others in exchange for cash and cocaine.

Dixon and five other friends and associates of appellants, among them Teresita Morris, Donna Alexander, Carl Williams and Robin Wilkes, were the government's chief witnesses as to the actual operations of the conspiracy. These witnesses gave testimony outlining a number of trips by Constantine to Los Angeles, California, from which he would return with parcels the size of small shoe boxes. Subsequent to her arrest with Constantine on November 21, 1988, Ms. Morris gave her consent for law enforcement officers to search two residences, one located in Kansas City, Missouri and the other in Kansas City, Kansas. Ms. Morris admitted having rented the

---

**1.** The Honorable Howard F. Sachs, United States District Judge for the Western District of    Missouri.

house in Kansas City, Kansas for Constantine. A weapon, ammunition, drug paraphernalia, and a briefcase, which was identified as Constantine's, were found during the search of the Missouri house. The house in Kansas was raided the following day, and Ebanks and Gregory Harvey, a nephew of Gohagen, were taken into custody.

A search of that dwelling produced three pistols, a briefcase similar to the one seized the day before, and a notebook with figures in it which bore Constantine's palm print. Ebanks had $1,278 on his person. The officers also found $10,630 in a brown shoulder bag near Ebanks and $43,900 in the briefcase. Both Ebanks and Harvey initially lied about their identities, as Gohagen, Swaby and Constantine previously had at the time of their arrests. As noted previously, all five appellants were convicted on March 3, 1989 of conspiring to distribute 50 or more grams of cocaine base and sentenced to lengthy terms of imprisonment.

The facts set forth above, which are amply supported by substantial evidence, reveal that each of the appellants was deeply involved in a conspiracy to distribute significant quantities of cocaine base. Although the role of Constantine was somewhat different from the others, the evidence adduced, both direct and circumstantial, clearly implicated all appellants in this unlawful conspiracy. We will first discuss those grounds for reversal which address specific concerns of the various appellants, then those grounds upon which any relief granted would inure to the benefit of all.

## II.  INDIVIDUAL GROUNDS

### A.  ONEIL STEPHENSON

#### 1.  *Motion to Suppress*

Stephenson contends that the district court erred in denying his motion to suppress statements and evidence obtained during his detention by Drug Enforcement Agency ("DEA") agent Carl Hicks at Kansas City International Airport on August 4, 1988. Specifically, Stephenson argues that the detention of him and the seizure of suspected drug money from him and his companion was unlawful due to the lack of any reasonable and articulable basis to support it. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967).

In support of the district court's ruling, the government advances a two-pronged argument defending the lawfulness of the stop and the seizure of the money. The government contends that the initial meeting between Stephenson and Hicks was merely a "consensual encounter" and, as such, neither implicated nor infringed upon the Fourth Amendment. The government then concedes that after Stephenson's answers and reactions aroused Hicks' suspicions, the encounter indeed escalated into a *Terry* "investigative stop," but suggests that the requisite legal justification was clearly present.

A hearing on Stephenson's motion to suppress was held before United States Magistrate John T. Maughmer on January 17, 1989. The evidence adduced at that hearing revealed that on the morning of August 4, 1988 Agent Hicks and another law enforcement officer were observing departing passengers in an effort to discover individuals traveling from Kansas City to New York City with illegal narcotics proceeds. At approximately 8:30 a.m., Hicks' attention was drawn to Stephenson and his companion, later identified as Tony D. Smith, because they appeared to be of Jamaican descent or members of a Los Angeles gang known for cocaine trafficking. Hicks observed a thick "wad" of money through the fabric of Smith's back pants pocket, and he noticed bundles of a similar size and shape in both front pockets. According to Hicks, both Stephenson and Smith appeared nervous as they approached the security gate.

Based upon all of these observations, Hicks came to the conclusion that Stephenson and Smith were possibly carrying to New York currency obtained from the sale of illegal narcotics in Kansas City. Hicks showed his badge to both Stephenson and Smith, identified himself as a police officer and asked if he could briefly speak with them, to which Stephenson replied in the

affirmative. The other officer was roughly ten feet away during this initial discussion.

Hicks at that time observed that Stephenson's hands and knees were shaking noticeably, and that Stephenson spoke with a Jamaican accent. Stephenson advised Hicks that he was traveling to New York City after having spent time in Los Angeles. After Stephenson voluntarily displayed both his and Smith's airplane tickets, Hicks noticed that the tickets were one-way to New York City and had been purchased for cash earlier that morning. The tickets were in the names of "T. Smith" and "J. Smith." Both Stephenson and Smith told Hicks that they had no identification with them.

Having become more suspicious of these two, Hicks again displayed his badge and identified himself as a DEA agent. He asked Stephenson and Smith if they had any drugs on their person, which they denied. Stephenson then consented to Hicks' request for permission to inspect his carry-on bag. A total of nearly $6,000 in cash was eventually recovered from Stephenson's bag and Smith's pockets, all in a consensual manner. Stephenson informed Hicks, inaccurately, that his real name was Steven Oneil, not J. Smith. The cash in question was mostly $20 bills sorted into bundles of $100, a common manner for drug traffickers in Kansas City to bundle and carry proceeds from drug transactions.

At this point, Hicks concluded that the currency taken from Stephenson and Smith was related to illegal narcotics transactions. He advised Stephenson and Smith that the money was being secured and, if they wished to wait for it to be counted, they would be given a receipt. Stephenson and Smith elected, however, to proceed to New York and gave Hicks a telephone number where they could be reached for information as to how to send the receipt to them. Shortly thereafter, a trained drug detection dog alerted to the smell of narcotics on the currency. The receipt mailed by Hicks to Stephenson in New York City was returned unclaimed and unopened and no claim for the seized money was ever received.

■■■ We review the district court's findings of fact under the clearly erroneous standard, and the ultimate conclusion of whether the Fourth Amendment was violated is subject to *de novo* review. *United States v. Campbell*, 843 F.2d 1089 (8th Cir.1988). We find no clear error in the findings of fact. As for the legal conclusions to be drawn therefrom, we agree with the decision below that the initial questioning of Stephenson and Smith was lawful. Such encounters do not implicate the Fourth Amendment on account of their consensual and public nature. *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Hernandez*, 854 F.2d 295 (8th Cir.1988). In *Royer*, the Supreme Court stated:

> [L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. *See Dunaway v. New York, supra*, 442 U.S. [200], at 210, n. 12, 99 S.Ct. [2248], at 2255, n. 12 [60 L.Ed.2d 824] [ (1979) ]; *Terry v. Ohio*, 392 U.S., at 31, 32–33, 88 S.Ct., at 1885–1886 (Harlan, J., concurring); *id.*, at 34, 88 S.Ct., at 1886 (White, J., concurring). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. *United States v. Mendenhall*, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (opinion of Stewart, J.)

460 U.S. at 497, 103 S.Ct. at 1324.

■■ Stephenson claims that the encounter became an investigative (*Terry*) stop when agent Hicks again flashed his badge, identified himself as a DEA agent and advised Stephenson and Smith that he suspected them of carrying currency obtained in illegal narcotics transactions. The cases in this circuit are somewhat inconsistent in their holdings as to the occurrence or non-occurrence of a *Terry*-stop under facts sim-

ilar to those in this matter. *Compare United States v. Condelee,* 915 F.2d 1206 (8th Cir.1990), *United States v. Millan,* 912 F.2d 1014 (8th Cir.1990) and *United States v. Drinkard,* 900 F.2d 140 (8th Cir.1990) *with United States v. McKines,* 917 F.2d 1077 (8th Cir.1990), *reh'g en banc granted,* (Dec. 28, 1990). However, we need not reach this issue because, even if an investigative stop occurred, the requirements of *Terry* were satisfied here. We find that the cumulative effect of the large bundles of cash visible in Smith's pockets, Stephenson's and Smith's noticeable nervousness, the apparent use of fictitious names, the one-way airplane tickets, and the time and manner of the purchase of the tickets was sufficient to give rise to a reasonable and articulable suspicion that these two individuals either had committed, or were committing, a crime.

2. *Criminal History Category Determination*

Stephenson also argues that the district court unfairly and improperly applied the Sentencing Guidelines in determining that his criminal record placed him for sentencing purposes in Criminal History Category II under the Sentencing Reform Act of 1984. Stephenson contends that the court's assignment of one criminal history point pursuant to § 4A1.2(a)(3) of the Guidelines for the imposition of a prior sentence of less than sixty days imprisonment and two points pursuant to § 4A1.1(d) for committing the instant offense while under a sentence of probation resulted in the imposition of a "grossly disproportionate" sentence that violated his rights under the Eighth Amendment and the Due Process Clause of the Fifth Amendment. Stephenson suggests that the district court's determination was the product of a "double-counting" that unfairly resulted in an additional five years of imprisonment. He asks that we order the district court to resentence him, this time as a Category I offender.

■■ We find no error in the district court's placement of Stephenson in Criminal History Category II for sentencing pur-

poses. Guidelines Section 4A1.1 provides, in subsections (a) and (b), that three points should be added for each prior sentence of imprisonment exceeding one year and one month and two points for each prior sentence of imprisonment of at least sixty days not counted in (a). Of greater relevance here is the provision in § 4A1.1(c) that "1 point [should be added] for each prior sentence not included in (a) or (b), up to a total of 4 points." Nowhere in the Guidelines or the Commentary thereto is a sentence of probation excepted from the provisions of § 4A1.1(c). The addition of one point thereunder was proper. The Guidelines provide in § 4A1.1(d) that the sentencing court should "[a]dd 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation ..." Certainly, it was not error for the district court to assign two points pursuant to this provision.

The one point added under subsection (c) merely addressed prior criminal conduct generally. The two points added under subsection (d) addressed the additional consideration of the recency of the prior criminal activity. Clearly, these provisions involve two distinct considerations and do not result in an improper or unconstitutional double-counting.

B. IAN GOHAGEN AND RAYMOND A. EBANKS

1. *Motion to Suppress*

Gohagen and Ebanks also argue that the district court erred in denying their motion to suppress certain statements made and evidence seized in the course of an airport encounter at LaGuardia Airport in New York City on November 5, 1987. As previously discussed, officers of the Kansas City, Missouri Police Department had notified authorities at LaGuardia that persons suspected of carrying large amounts of currency were on board a particular flight from Kansas City to New York City. Subsequent thereto, Gohagen, Ebanks and a female companion were questioned in the terminal immediately after deplaning by agents of the DEA and the Port Authority

Police Department. In circumstances remarkably similar to those attendant to the encounter between Stephenson and agent Hicks, Gohagen and Ebanks were approached by the agents and asked if they would answer a few questions. They agreed to do so. The questioning revealed that Gohagen, Ebanks and their female companion were all traveling under fictitious names on airplane tickets purchased that same morning for cash. Ebanks' attempted explanation of the situation was misleading and inconsistent. Both Gohagen and Ebanks subsequently consented to a search of their carry-on bags, whereby the agents discovered what was later determined to be $6,190 in cash. After a drug detection dog reacted positively to the presence of narcotics residue on it, the currency was seized by the agents.

Although the facts and circumstances surrounding the airport incidents of Stephenson in Kansas City and Gohagen and Ebanks in New York City are very similar, the legal arguments advanced in support of their respective motions to suppress are somewhat different. Whereas Stephenson focused primarily upon Fourth Amendment considerations in his motion, Gohagen and Ebanks contend in theirs that the use at trial of the statements and evidence obtained during the LaGuardia encounter violates their rights under the Fifth Amendment pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

As noted previously, a district court's findings of fact on a motion to suppress are reviewable under the clearly erroneous standard. *United States v. Campbell, supra; United States v. Flett*, 806 F.2d 823, 826 (8th Cir.1986). We find no clear error in the district court's findings of fact regarding the November 5, 1987 encounter at LaGuardia airport involving Gohagen and Ebanks and the various law enforcement agents.

■ As for the legal conclusions to be drawn from those findings, let it first be said that we find *Miranda* inapposite to the facts of this case. *But cf. United States v. Blackman*, 897 F.2d 309 (8th Cir.

1990) (detention "custodial" for *Miranda* purposes where numerous police officers were waiting to arrest defendant on specific charge; however, trial court's denial of suppression motion harmless due to great weight of other evidence). Further, we find, consistent with the determination below, that Gohagen and Ebanks were not, and should not have felt, deprived of their liberty by the encounter and that the statements and evidence obtained were the products of a consensual encounter and search and, thus, were properly admitted at trial. Although the question presented here is somewhat closer than that raised by Stephenson, we are nonetheless convinced that this encounter amounted to something less than the "custodial interrogation" to which *Miranda* applies.

### 2. *Motion to Dismiss—Former Jeopardy*

Gohagen contends that the district court erred in denying his motion to dismiss the indictment as to him on the ground of former, or double, jeopardy in light of his previous conviction for distribution of crack during the same time frame as the alleged conspiracy. Gohagen urges this Court to follow the "totality of the circumstances" test articulated in *United States v. Thomas*, 759 F.2d 659, 662 (8th Cir.1985), *cert. denied*, 474 U.S. 980, 106 S.Ct. 382, 88 L.Ed.2d 336 (1985), in determining whether his conviction below was violative of the double jeopardy clause of the Fifth Amendment to the United States Constitution. In *Thomas*, however, each of the two indictments charged defendant with a conspiracy offense. The analysis in *Thomas* is not particularly helpful in this case. Here, Gohagen was previously charged with and convicted of the substantive offense of distribution of cocaine base. In the later indictment, with which we are concerned on this appeal, he was charged with *conspiracy* to distribute cocaine base.

■ A defendant may be cumulatively punished if conviction on each offense requires proof of a fact not required by the other. *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977);

*United States v. Martin,* 867 F.2d 476, 478 (8th Cir.1989). More specifically, we have previously held that where it was not necessary to prove completion of the substantive offense in order to prove conspiracy, nor was proof of a conspiracy necessary for a conviction of the substantive crime charged, double jeopardy did not exist. *United States v. Udey,* 748 F.2d 1231, 1238 (8th Cir.1984), *cert. denied,* 472 U.S. 1017, 105 S.Ct. 3477, 87 L.Ed.2d 613 (1985). The motion to dismiss was properly denied.

## C. CHRISTOPHER CONSTANTINE AND MICHAEL SWABY

### 1. *Motion for Severance*

Constantine contends that the district court erred in denying his motion for severance. He argues that as a result of being tried with the other defendants he was greatly prejudiced by the introduction of evidence of specific crimes and other bad acts committed by his coconspirators, even though there was no direct evidence of any involvement by him in those transactions.

■ "It is the general rule that persons charged in a conspiracy should be tried together, particularly where proof of the charges against the defendants is based upon the same evidence and acts." *United States v. Jackson,* 549 F.2d 517, 523 (8th Cir.1977), *cert. denied, sub nom. Muhammad v. United States,* 430 U.S. 985, 97 S.Ct. 1682, 52 L.Ed.2d 379 (1977); *accord, United States v. Anderson,* 879 F.2d 369, 375 (8th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 515, 107 L.Ed.2d 516 (1989). This preference for joint trials is not limited by any requirement that the quantum of evidence of each defendant's culpability be quantitatively or qualitatively equivalent. *Jackson, supra* at 525. Rarely, if ever, will it be improper for coconspirators to be tried together. *United States v. Drew,* 894 F.2d 965, 968 (8th Cir.1990), *cert. denied,* — U.S. ——, 110 S.Ct. 1830, 108 L.Ed.2d 959 (1990). To prevail on this point, Constantine must show clear prejudice and abuse of discretion. *United States v. Martin,* 866 F.2d 972, 979 (8th Cir.1989). No such showing has been made. According-

ly, we find no error in the district court's denial of the motion for severance.

### 2. *Motions to Dismiss—No Overt Acts*

■ Constantine and Swaby contend that the district court should have granted their motions to dismiss the indictment on the ground that the indictment was defective because it did not contain any allegations as to any overt acts carried out in furtherance of the conspiracy. As the United States points out, 21 U.S.C. § 846 does not require submission or proof of overt acts to sustain a conspiracy conviction thereunder. *United States v. Covos,* 872 F.2d 805, 809–10 (8th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989). We find no error in the district court's denial of these motions.

### 3. *Motion for Bill of Particulars and Motion in Limine*

On January 9, 1989, Swaby filed a Motion to Dismiss the Indictment and Request for Bill of Particulars, alleging that the indictment was "vague and ambiguous" and should have been dismissed as "void for vagueness." The district court denied this motion and request and Swaby asserts that it was error to do so. In particular, Swaby complains that the indictment failed to specifically identify the place that the alleged conspiracy was carried out. This motion, as well as a subsequent motion in limine, also addressed the use at trial of evidence concerning Swaby's arrest on March 17, 1988 in Kansas City, Kansas for related drug offenses. Swaby contends that the indictment did not address conduct within the State of Kansas; therefore, use of this evidence at trial by the United States resulted in an unlawful variance of the indictment.

In response, the Government contends that its "open file" policy with respect to this case, pursuant to which photocopies of more than a thousand pages of documents were provided, resulted in Swaby and his codefendants having all of the information they needed to understand the charges against them and to present a complete defense thereto. Further, the United

States points out that, inasmuch as the indictment expressly alleged that the conspiracy took place "at Kansas City, in the Western District of Missouri, and elsewhere," no variance resulted.

■■■■ The trial court has broad discretion in granting or denying a bill of particulars. *See, e.g., United States v. Key*, 717 F.2d 1206, 1210 (8th Cir.1983). To establish reversible error from the denial of such a motion, a defendant must show that he was actually surprised at trial and suffered prejudice by the denial. *United States v. Arenal*, 768 F.2d 263, 268–69 (8th Cir.1985). In the present case, Swaby has not shown how he was surprised at trial or how he was prejudiced by the denial of his request for the bill of particulars. We cannot say that the district court abused its discretion in denying the bill of particulars. Similarly, we agree that the introduction of the evidence regarding the Kansas City, Kansas arrest did not constitute a variance of the indictment.

In a somewhat related motion in limine, Swaby asked the district court to prohibit the United States from introducing any and all evidence related to his arrest in Kansas City, Kansas, particularly the considerable quantities of cocaine base and cash recovered from his pockets. That motion, too, was denied by the district court. The thrust of Swaby's argument on this point is that such evidence was not relevant to the charge in the instant case, but, rather, was offered to prove his bad character. He contends that this evidence of other bad acts should have been rejected pursuant to Rule 404(b) of the Federal Rules of Evidence.

■■■■ The United States denies that the evidence regarding Swaby's arrest in Kansas City, Kansas was Rule 404(b) evidence, asserting that it was directly related to the conspiracy alleged and, as such, was clearly admissible to prove his guilt of the offense charged. The Government points out that this arrest took place during the period of the alleged conspiracy and resulted in the seizure of evidence which tied that transaction to the larger conspiracy alleged in the indictment. "[E]vidence which is

probative of a crime with which a defendant is charged, and not *solely* of some other uncharged crimes, is not evidence of 'other bad acts.'" *United States v. Westbrook*, 896 F.2d 330, 334 (8th Cir.1990). We agree with the district court's finding that nothing in the indictment precluded evidence of conduct in Kansas City, Kansas from being used as direct evidence against Swaby or his coconspirators and that its admission at trial was proper.

### 4. *Double Jeopardy*

■■■ Swaby also contends that the vague wording of the indictment has exposed him to prosecution in the State of Kansas upon the same charge of which he was convicted below in violation of his rights under the double jeopardy clause of the Fifth Amendment. According to the latest information provided, no charges of any kind, either state or federal, have been filed to date against Swaby arising from his arrest on March 17, 1988. We agree with the United States that this argument is both speculative and premature and find no merit in it.

## III. COLLECTIVE GROUNDS

### A. EVIDENTIARY MOTIONS

#### 1. *Motions Related to Appellant's Nationality*

■■■ It is argued by Stephenson, Gohagen and Ebanks that the trial court erred in overruling appellants' objections to certain exhibits and testimony concerning, *inter alia*, the nationality of appellants, who are all Jamaican nationals. Appellants contend that references to their nationality created a bias against them on the part of the jury and deprived them of a fair trial. While it is indeed true that appellants were entitled to a trial free of racial bias, *see United States v. Doe*, 903 F.2d 16 (D.C.Cir. 1990), appellants have failed on this appeal to specifically identify any statements of the prosecutor or any government witness which prejudiced the jury against appellants on account of their Jamaican nationality.

The scant discussion given this point by appellants reveals the lack of merit therein. The admissibility of evidence, as well as rulings governing examination of witnesses, are subject to review under the abuse of discretion standard. *United States v. LeAmous,* 754 F.2d 795 (8th Cir. 1985), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2684, 86 L.Ed.2d 701 (1985). We cannot say upon the arguments presented that the district court abused its discretion in any of its rulings on motions related to evidence of appellants' nationality.

### 2. Motions Addressing Admissibility of Evidence Outside the Period of the Conspiracy Alleged

Stephenson and Gohagen contend that the district court erred in admitting into evidence at trial certain drugs, guns, cash and other items which were seized outside the time frame of the conspiracy alleged in the indictment. Specifically, they assert that the court erred in permitting the government to introduce various drug paraphernalia, weapons and cash seized from one to three months after the close of the period of the conspiracy as alleged in the indictment. Stephenson also contends that he was unfairly prejudiced by the admission of the drugs and cash found on Swaby's person when he was arrested on March 17, 1987 in Kansas City, Kansas. Appellants contend that these items were evidence of other bad acts and, as such, their admissibility was governed by Rule 404(b) of the Federal Rules of Evidence. Appellants argue that admission of this evidence was improper under Rule 404(b) and that, inasmuch as it was seized outside the period of time alleged, its admission resulted in an improper variance of the charge set out in the indictment.

In response, the government notes that the vast majority of the challenged exhibits were obtained between May 27, 1987 and August 23, 1988, the fifteen month period of the conspiracy charged in the indictment. The government also points out that of the evidence seized after August 23, 1988—weapons, ammunition, scales, photographs, identification cards, and scraps of paper—none was *per se* illegal, and appellants have never articulated how this evidence and accompanying testimony constituted the "other crimes, wrongs, or acts" addressed by Rule 404(b). Thus, the government argues that Rule 404(b) was inapplicable to these items of evidence because they served as proof of the very charge for which these appellants were on trial, not of some other unrelated crime or act committed either prior or subsequent to the stated period of the conspiracy.

The facts relevant to this issue are not really in question. It is undisputed that a relatively small portion of the physical evidence introduced at trial was obtained by law enforcement officers on November 21 and 22, 1988, one week after the return of the indictment and three months subsequent to the end date of the conspiracy period alleged. However, some of that evidence may very well have been, and in all likelihood was, utilized by appellants or their unindicted coconspirators during the conspiracy period. The facts being generally undisputed here, our task is merely to determine whether the district court abused its considerable discretion in permitting the government to introduce this evidence at trial. *See United States v. LeAmous, supra.*

We simply are not convinced that the admission of this evidence was governed by Rule 404(b). Evidence is not subject to the provisions of Rule 404(b) if its "possession is not a federal crime." *United States v. Petty,* 798 F.2d 1157, 1161 (8th Cir.1986), *partially vacated on other ground, cert. denied on remaining grounds,* 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987). There was no showing made that mere possession of the evidence with which we are concerned here was or is, by itself, illegal under federal law.

Similarly, we do not agree that this was evidence of "other crimes, wrongs or acts." We think this evidence can be more accurately described as evidence plainly relevant to the existence of and appellants' participation in the conspiracy charged, and, thus, was properly admissible. *See United States v. Bagaric,* 706 F.2d 42, 68

(2nd Cir.1983), *cert. denied*, 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983); *see also United States v. Westbrook, supra.* "Evidence of a conspirator's post conspiracy activity is admissible if probative of the existence of a conspiracy or the participation of an alleged conspirator, 'even though they might have occurred after the conspiracy ended.'" *United States v. Fields*, 871 F.2d 188, 197 (1st Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 369, 107 L.Ed.2d 355 (1989), quoting *Anderson v. United States*, 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974). Because we find that the challenged evidence was indeed probative of the existence of the conspiracy and appellants' participation therein, we agree with the district court that this evidence was properly admissible.

### 3. Sentencing—Base Offense Level Determination

■ Stephenson, Gohagen and Ebanks all contend that the district court erred in determining that this conspiracy involved the distribution of more than 500 grams of cocaine base and, thus, that for Guidelines Sentencing purposes the applicable base offense level for appellants' crime was level 36. The district court concluded, after considering the $112,867 in cash seized and the testimony that crack was routinely sold for $120 per gram, that this conspiracy involved the distribution of 1,173.88 grams of cocaine base. The Guidelines provide that level 36 is the appropriate base offense level for a conspiracy involving the distribution of more than 500 grams of cocaine base.

Appellants argue that the quantity of cash seized was insufficient evidence for the purposes of determining the base offense level, and that the district court's reliance upon it was unreasonable and irrational. Appellants suggest that the district court deprived them of certain due process rights in applying level 36 for sentencing purposes. They contend that the base offense level should be determined strictly by the amount of cocaine base either purchased or seized during the conspiracy period—some 233 grams, and that the proper base offense level was, therefore, level 34.

The government replies that the Guidelines provide for the sentencing judge to approximate the quantity of drugs involved in an offense where the amount of drugs seized does not reflect the scale of the offense. The government asserts that the district court quite properly calculated, in light of the testimony that cocaine base sold for $120 per gram, that the $112,867 in cash was the monetary equivalent of 940 grams. Further, the government points out that even if the amount of cash seized outside the conspiracy period is omitted from the calculation, the remaining $56,669 yields 472 grams of cocaine base, which when added to the 233.88 grams of drugs seized during the conspiracy still results in a total quantity of 705.88 grams, far in excess of the amount required for application of level 36.

The Sentencing Guidelines provide that "where there is no drug seizure or the amount seized does not reflect the scale of the offense, the sentencing judge shall approximate the quantity of the controlled substance ... [and] may consider ... the price generally obtained for the controlled substance." Guidelines Manual § 2D1.4, Commentary Note 2; *United States v. Gohagen*, 886 F.2d 1041, 1043 (8th Cir.1989). The commentary, although not binding, is persuasive.

As noted, the district court considered the amount of cocaine base purchased or seized from the conspirators and the amount of cash recovered in determining the minimum amount of drugs involved in this conspiracy. The court concluded that minimum amount was 1,173.88 grams of cocaine base, and in so doing declared that the government had made a clear and convincing case on this point.

The use of cash and money order receipts in calculating the amount of controlled substance involved in an offense for sentencing purposes has previously been approved. *See United States v. Johnson*, 906 F.2d 1285, 1290–91 (8th Cir.1990). Further, we must accept the district court's findings of fact in the sentencing proceeding unless they are clearly erroneous. 18

U.S.C. § 3742(e); *United States v. Brett,* 872 F.2d 1365, 1371 (8th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989). After careful review, we cannot say that the district court erred in determining the quantity of cocaine base involved in this conspiracy.

The judgments of conviction are affirmed.