UNITED STATES of America, Appellee,

v.

Carl Edward DICKSON, Appellant.

No. 94–3784.

United States Court of Appeals,
Eighth Circuit.

Submitted May 16, 1995.

Decided Aug. 28, 1995.

Virginia G. Villa, Federal Public Defender, argued, Minneapolis, MN, for appellant.

Andrew Stephen Dunne, argued, Minneapolis, MN, for appellee.

Before WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and BOGUE,* Senior District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Carl Dickson pleaded guilty in federal district court in mid–1994 to one count of bank robbery using a dangerous weapon. *See* 18

---

* The HONORABLE ANDREW W. BOGUE, Senior United States District Judge for the District of South Dakota, sitting by designation.

**410**

U.S.C. § 2113(a), § 2113(d). His plea was conditional upon appellate review of the district court's denial of his motion to suppress evidence recovered after the search of an apartment. *See* Fed.R.Crim.P. 11(a)(2). This court affirmed Mr. Dickson's conviction, stating that Mr. Dickson had failed to establish that he had a legitimate expectation of privacy in that apartment. *See United States v. Dickson,* 58 F.3d 1258, 1264 (8th Cir.1995).

■ On petition for rehearing by the panel, Mr. Dickson asserts that he did indeed establish such an expectation. He cites the testimony of a police officer during a hearing on Mr. Dickson's motion to suppress. That testimony concerned an interview by the police officer with a juvenile who was riding in the same car as Mr. Dickson when the police stopped the car. The juvenile stated to the officer, according to the testimony, that Mr. Dickson had been staying in the apartment in question "for a couple of days" as a guest. We agree with Mr. Dickson that that testimony is sufficient to establish that he had a legitimate expectation of privacy in the apartment. *See, e.g., Minnesota v. Olson,* 495 U.S. 91, 96–100, 110 S.Ct. 1684, 1687–90, 109 L.Ed.2d 85 (1990). We therefore vacate an earlier order denying rehearing, *see United States v. Dickson,* 58 F.3d 1258, 1266 (8th Cir.1995) (*per curiam*), and consider the merits of Mr. Dickson's appeal of the district court's denial of his motion to suppress evidence recovered after the search of the apartment.

Mr. Dickson argues that it was unlawful under the fourth amendment both for the police to try in the apartment door the keys found in a search of the car in which Mr. Dickson was riding and for the police to search the apartment upon finding that one of the keys unlocked the apartment door. During that search, the police discovered an envelope addressed to a woman who had also been riding in the car with Mr. Dickson. The police referred to that envelope in their application for a search warrant of the apartment, citing the connection between the apartment, the woman occupant of the car, and the presence in the same car of Mr. Dickson—who had been positively identified by witnesses as one of the bank robbers—as additional support for that application. Mr. Dickson argues that because the information about the woman's residence was obtained from an illegal search, the warrant was invalid, and therefore that the evidence obtained consequent to the warrant (a gun and $20,000 in cash) should have been suppressed. We disagree.

"Under the 'fruit of the poisonous tree' doctrine, the exclusionary rule bars the admission of physical evidence ... obtained directly or indirectly through the exploitation of police illegality.... The Supreme Court, however, has recognized three analytically distinct exceptions to this doctrine.... [U]nder the 'independent source' doctrine, the challenged evidence will be admissible if the prosecution can show that it derived from a lawful source independent of the illegal conduct.... Second, challenged evidence will be admissible under the 'attenuation' doctrine, even though it did not have an independent source, if the causal connection between the constitutional violation and the discovery of the evidence has become so attenuated as to dissipate the taint.... Third, challenged evidence will be admissible under the 'inevitable (or ultimate) discovery' doctrine if the prosecution can establish that it inevitably would have been discovered by lawful means without reference to the police misconduct." *Hamilton v. Nix,* 809 F.2d 463, 465–66 (8th Cir.1987) (*en banc*), *cert. denied,* 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987). We believe that all three exceptions may be applied in this case.

■ It is undisputed that after the police entered the apartment, the woman arrived there and gave consent for a search of the apartment. According to a magistrate's findings of fact (taken from a report on a hearing on Mr. Dickson's motion to suppress and subsequently adopted by the district court), the woman came to the apartment with a second police officer after a different police officer had tried the keys in the apartment door and entered the apartment. In other words, it was not the envelope with her name on it that led the police to ask for her consent to search but, instead, her arrival at and presence in the apartment itself.

In our view, the woman's consent for a search was an independent act, causally unconnected to the actions of the police in trying the keys in the apartment door and entering the apartment. That consent, therefore, if voluntary, makes lawful the search that revealed the gun and the money. *See, e.g., Schneckloth v. Bustamonte,* 412 U.S. 218, 222, 248–49, 93 S.Ct. 2041, 2045, 2059, 36 L.Ed.2d 854 (1973). We see nothing in the transcript of the hearing on the motion to suppress or in the magistrate's findings to suggest that the woman's consent was not voluntary. Nor, we note, does Mr. Dickson so argue.

■ In the alternative, even if we consider the request by the police for consent to search the apartment to have been at least a partial consequence of their discovery of the envelope with the woman's name on it, and even if we assume that that discovery was the result of an illegal search, we hold that the police obtained the woman's consent " 'by means sufficiently distinguishable to be purged of the primary taint' " of the illegal search. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); *see also Brown v. Illinois,* 422 U.S. 590, 603–04, 95 S.Ct. 2254, 2261–62, 45 L.Ed.2d 416 (1975). That is because although the discovery of the envelope and the woman's consent were close in time, *see, e.g., Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62, there is no evidence in the record that the woman's arrival at the apartment was coerced (she was not in custody at that time). We note, as well, that even though the woman gave consent to search the apartment, she declined to sign any written forms. That suggests to us that the police may have advised her that she did not have to sign anything—a further indication that the police were not "attempting to exploit an illegal situation." *United States v. Ramos,* 42 F.3d 1160, 1164 (8th Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 2015, 131 L.Ed.2d 1013 (1995).

■ Finally, we observe that the discovery of the envelope with the woman's name on it merely facilitated the investigation, which, we believe, would have inevitably led to an application for a search warrant that would not necessarily have been dependent on the woman's connection to the apartment (one of the other occupants of the car having told the police that he and Mr. Dickson—who had been positively identified by witnesses as one of the bank robbers—had been staying in the apartment in question). *See, e.g., United States v. Watson,* 950 F.2d 505, 507–08 (8th Cir.1991).

We therefore affirm the denial by the district court[1] of Mr. Dickson's motion to suppress the evidence recovered from the apartment.

---

**1.** The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.