No. 95-3881

United States of America,        *
                                    *

        Appellee,               *

                                    *  Appeal from the United States

     v.                         *  District Court for the
                                    *  District of Minnesota.

James Earl Atlas,               *

                                    *

        Appellant.            *

_____

Submitted:  May 14, 1996

Filed:  August 26, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, MAGILL, Circuit Judge, and VAN
    SICKLE,* District Judge.

_____

MAGILL, Circuit Judge.

James Atlas appeals his conviction for being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1), contending that the warrantless search of a duffel bag was unconstitutional because the searching police officers did not possess a reasonable suspicion that they were in imminent danger.  Atlas also contends that the district court erred at sentencing in awarding only a two level reduction for acceptance of

---

*THE HONORABLE BRUCE M. VAN SICKLE, United States District Judge for the District of North Dakota, sitting by designation.

responsibility, rather than a three level reduction.[1]  We affirm in part, reverse in part, and remand for resentencing.

## I.

On September 13, 1994, Minneapolis, Minnesota Police Officers Jason Reimer and Frederick McDonald responded to a "retrieve property"[2] call at 1007 Humboldt Avenue North in Minneapolis.  The officers were advised that there was a "hazard" warning on this address, which means that some previous incident had occurred at this address to which officers should be alerted.  In this case, paramedics had previously been attacked by the family at that residence, and later at the hospital the family tried to attack the paramedics again.  The officers were also alerted that that area, and 1007 Humboldt in particular, was high in gang activity.

Given this information, the officers parked a few houses away and approached 1007 Humboldt on foot.  As Officer Reimer walked through the yards of houses near 1007 Humboldt, he saw Atlas standing on a house porch. As the two made eye contact, Officer Reimer saw that Atlas's eyes "got big, like he was surprised to see the police."  Testimony of Officer Reimer, Tr. of Hr'g Before the Magistrate Judge at 11 (Mar. 29, 1995) (hereinafter cited as "Tr. at").  Reimer also noted that Atlas was holding a soft nylon bag in his hand.  As soon as Atlas saw Officer Reimer, he dropped the duffel bag, and Officer Reimer heard a "thud" when the bag hit the ground. Tr. at 11.  Atlas then turned away from the bag and walked

---

[1]The government cross-appealed from the sentence, but this appeal was dismissed on April 25, 1996.

[2]A retrieve property call involves a party to a past domestic dispute obtaining police oversight of that person's recovery of personal belongings from a dwelling after that person has been excluded, usually pursuant to a domestic arrest.  Police oversight is needed to ensure that no further altercation or violation of protective orders takes place.

towards one of the doors of the house.

At this point, Officer Reimer approached Atlas. He wanted to find out if Atlas was the one who had made the initial retrieve property call. Tr. at 11. Further, he suspected that the bag may have contained a gun. He based this suspicion on three factors: (1) the way that Atlas threw the bag down when he saw Officer Reimer; (2) the thud that the bag made when it landed; and (3) the fact that Officer Reimer had, just one week earlier, recovered a weapon from a nylon bag similar to the one just discarded by Atlas. Id. at 11-12.

As he approached the house, Officer Reimer asked Atlas if the house was 1007 Humboldt, to which Atlas responded "no." Tr. at 12. He then asked Atlas what was in the bag. When Atlas responded, "[W]hat bag?," Reimer said, "[T]he one you just threw down." Testimony of Officer Reimer, Tr. of Evidentiary Hr'g Before the District Judge at 6-7 (July 6, 1995) (hereinafter cited as "E.H. Tr. at"). Notwithstanding the thud that Reimer heard when the bag was thrown down, Atlas responded, "[O]h, oh nothing." Id. at 6.

Officer Reimer testified that, at this point, Atlas appeared "real nervous." Tr. at 12. Atlas continually shifted his gaze between the bag and Officer Reimer, "as if [Atlas] didn't want [Officer Reimer] to look at" the bag. Id. At that point, after having seen Atlas's nervous reaction, and after having received several evasive answers to questions, Officer Reimer told Atlas to place his hands on the wall for a pat search. E.H. Tr. at 22, 67. He asked Atlas if the bag was his, to which Atlas said "no." Tr. at 13. Officer Reimer then began to pat search Atlas for weapons.

Officer McDonald approached the house, and Officer Reimer told him to check the bag. Officer McDonald touched the bag, and he felt the barrel of what he thought was a shotgun. When he advised Officer Reimer that there was a shotgun in the bag, Atlas began to

-3-

resist and fight Officer Reimer.  After the two officers finally succeeded in handcuffing Atlas, they opened the bag and found a loaded, bolt-action rifle with a sawed-off barrel, plus a round of ammunition and items relating to a local gang.  The officers then ran a routine warrant check on Atlas and discovered that there was an outstanding warrant for a federal parole violation.  Atlas was taken to the Hennepin County Jail and booked for the warrant and the firearms violation.

Atlas brought a motion in the district court to suppress the gun, contending that the search violated the Fourth Amendment because Officer Reimer lacked a reasonable suspicion that Atlas was engaged in criminal activity.  After a hearing before a magistrate judge on May 8, 1995, the magistrate judge recommended granting Atlas's motion.

The government objected to the magistrate judge's report and recommendation.  The district court held an evidentiary hearing on July 6, 1995, and it adopted the magistrate judge's factual findings.  Although the court also agreed with the magistrate judge's conclusion that Officer Reimer lacked a reasonable suspicion that criminal activity was afoot, the district court nevertheless denied Atlas's motion to suppress, concluding that Officer Reimer possessed a reasonable belief that he was in imminent danger.

Atlas then entered a conditional guilty plea on the felon in possession count, reserving the right to appeal the denial of the motion to suppress.  As part of the plea, the parties agreed that Atlas should receive a three level reduction in the offense level for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.  At sentencing, however, the court awarded only a two level reduction, because of its finding that Atlas, while incarcerated at the Anoka County Jail awaiting sentencing, had continually violated facility

rules and had been an ongoing disruptive influence at the facility.[3]  Atlas was sentenced to seventy-eight months in prison and three years of supervised release, and he was ordered to pay a $50 special assessment.

## II.

Where a police officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous," the officer is entitled to conduct a limited search of that person to discover any weapons that may be used to harm the officer.  Terry v. Ohio, 392 U.S. 1, 30 (1968).  We review de novo the district court's conclusions regarding whether a reasonable suspicion existed.  See Ornelas v. United States, 116 S. Ct. 1657, 1663 (1996).  However, a reviewing court should "review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers."  Id.

In analyzing whether a "reasonable suspicion" existed, "'the totality of the circumstances--the whole picture--must be taken into account.'"  United States v. Dickson, 58 F.3d 1258, 1262 (8th Cir.) (quoting United States v. Cortez, 449 U.S. 411, 417 (1981)), aff'd on reh'g, 64 F.3d 409 (8th Cir. 1995), cert. denied, 116 S. Ct. 747 (1996).  We must consider the information available to the police at the time of the search.  In so doing, "we weigh that information 'not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'"  Id. (quoting Cortez, 449 U.S. at 418).

---

[3]Incidents included refusing to lockdown, use of verbal threats against staff, profanity directed at staff, acting out of control, interfering with a shakedown, and spitting in a deputy's face.  See Mem. from Lieutenant R. P. Poirier to Captain D. Brehm (Aug. 15, 1995), reprinted in Appellee's Add. at 3.

We agree with the government that Officer Reimer possessed a reasonable suspicion that criminal activity was afoot and that Atlas was armed and dangerous.[4] First, we note that the officers were responding to a call in a dangerous neighborhood, one that was high in gang activity. The house they were proceeding to was suspected of gang activity and was the subject of a hazard call. While the defendant's presence in a dangerous area is not by itself enough to raise a reasonable suspicion, "an area's propensity toward criminal activity is something that an officer may consider." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993); see also United States v. Evans, 994 F.2d 317, 322 (7th Cir.) (same), cert. denied, 510 U.S. 927 (1993).

Most significantly, Atlas's reaction upon seeing Officer Reimer supports a determination of reasonable suspicion. When Atlas saw Reimer, his eyes grew wide, suggesting he was surprised to see the officer. He immediately threw down the bag that was in his hand, and he began to walk towards one of the doors of the house. When Officer Reimer began asking questions of Atlas, he appeared "real nervous" and gave evasive answers to the officer.

Further, when the bag landed, it made a loud thud. Clearly a heavy object was inside. As Officer Reimer testified, just one week earlier, he had recovered a firearm in a nylon bag similar to the one discarded by Atlas. His suspicions about this bag and its contents were further aroused because Atlas continually shifted his

---

[4]We note that the district court concluded that Officer Reimer did not possess a reasonable suspicion that criminal activity was afoot. We review this conclusion de novo. See Ornelas, 116 S. Ct. at 1663 (standard of review). However, the district court appeared to base its conclusion on the fact that "certainly the officer could not have known that the defendant would have otherwise been or in this case a felon in possession." E.H. Tr. at 68. However, the officers need not have known that Atlas was a felon in possession to justify a Terry stop. They need only have suspected, based on the circumstances, that criminal activity was afoot. We conclude that they meet this standard. See infra.

gaze between the bag and Officer Reimer, as if Atlas was afraid that Officer Reimer would look at the bag.

Based on these factors, and mindful that the government at a suppression hearing need only demonstrate that a reasonable suspicion existed by a preponderance of the evidence, see United States v. Matlock, 415 U.S. 164, 178 n.14 (1974), we conclude that Officer Reimer reasonably suspected that there was a weapon in the bag and that there was something illegal about the defendant's possession of the weapon. See, e.g., United States v. Bloomfield, 40 F.3d 910, 918-19 (8th Cir. 1994) (en banc) (defendant's extreme nervousness contributed to reasonable suspicion), cert. denied, 115 S. Ct. 1970 (1995); United States v. Jones, 990 F.2d 405, 407 (8th Cir.) (defendant's nervous appearance and deceptive answers to police questions contributed to reasonable suspicion), cert. denied, 510 U.S. 934 (1993); United States v. Willis, 967 F.2d 1220, 1223 (8th Cir. 1992) (when defendant leaves the scene and abandons bag upon seeing the police, this supports reasonable suspicion). Given this, the search of Atlas and the duffel bag were proper. See United States v. Johnson, 637 F.2d 532, 535 (8th Cir. 1980) (officer conducting valid Terry frisk may search duffel bag a few feet from the suspect).

### III.

Atlas also contends that the district court erred at sentencing in awarding only a two level reduction for acceptance of responsibility, rather than a three level reduction, due to Atlas's presentence deportment. Whether presentence deportment may be used as a factor in determining if a defendant qualifies for a reduction in offense level under U.S.S.G. § 3E1.1 raises a question of guideline application, and we review de novo. United States v. Gullickson, 981 F.2d 344, 346 (8th Cir. 1992).

We agree with the district court that presentence deportment

is a factor that may be considered in applying the acceptance of responsibility reduction in offense level under § 3E1.1. This Circuit has held that a district court may consider conduct that is not similar to the charged conduct in order to determine if a defendant is truly sorry for the crimes for which he has been convicted. See United States v. Byrd, 76 F.3d 194, 196-97 (8th Cir. 1996). Moreover, the conduct at issue may be noncriminal conduct, see United States v. Cross, 900 F.2d 66, 70 (6th Cir. 1990) (defendant denied reduction because he refused to provide financial information to the court), for noncriminal conduct nonetheless does "'shed light on the sincerity of a defendant's claims of remorse.'" Byrd, 76 F.3d at 197 (quoting United States v. O'Neil, 936 F.2d 599, 600 (1st Cir. 1991)). Atlas's behavior in jail while awaiting sentencing is a valid factor under § 3E1.1.

The district court did err, however, in the amount of reduction it awarded. Under U.S.S.G. § 3E1.1, a defendant's offense level may be decreased by a total of three levels: two levels for acceptance of responsibility, see U.S.S.G. § 3E1.1(a), and one additional level for timely acceptance of responsibility, see U.S.S.G. § 3E1.1(b). As its basis for granting only a two level reduction, the district court noted that Atlas had not fully accepted responsibility. The court did not mention the timing of acceptance at all. Therefore, we infer that the district court awarded a one level reduction under § 3E1.1(a) and a one level reduction under § 3E1.1(b).

The inquiry under § 3E1.1(a) is whether the defendant did or did not accept responsibility. Nothing in the text of the guideline or its commentary suggests that the district court may deviate from the guidelines for "partial acceptance" of responsibility. As the Fifth Circuit has noted, "allow[ing] the district court to award a one-level reduction [under § 3E1.1(a)] permits the district court to straddle the fence in close cases without explicitly finding whether the defendant did or did not

-8-

accept responsibility." <u>United States v. Valencia</u>, 957 F.2d 153, 156 (5th Cir. 1992); <u>see also</u> <u>United States v. Carroll</u>, 6 F.3d 735, 741 (11th Cir. 1993) (same), <u>cert. denied</u>, 114 S. Ct. 1234 (1994); <u>cf.</u> <u>United States v. Cron</u>, 71 F.3d 312, 313 (8th Cir. 1995) (citing <u>Valencia</u> approvingly, although not reaching merits).  Thus, the district court may not award a one level reduction under § 3E1.1(a) for partial acceptance of responsibility.

We thus remand for resentencing.  At resentencing, the district court must consider, after viewing all relevant factors, whether Atlas accepted responsibility.  If the answer is yes, then Atlas is entitled to a two level reduction under § 3E1.1(a), and he may also be entitled to a further one level reduction under § 3E1.1(b).  If he has not fully accepted responsibility, then he is not entitled to any reduction under § 3E1.1.

**IV.**

We affirm the district court's conclusion that the frisk was proper under <u>Terry</u>.  However, the court erred in sentencing, and so we remand for resentencing in conformity with Part III of this opinion.

RICHARD S. ARNOLD, Chief Judge, dissenting.

I would hold, as did the Magistrate Judge who heard the evidence in this case, that the police lacked sufficient reasonable suspicion to justify the search of the defendant.

Mr. Atlas was on the front porch of his own house.  He looked up and saw Officer Reimer in the front yard.  When Mr. Atlas saw the officer, he was surprised and dropped a bag he was holding.  The bag landed with a thud.

With respect, I cannot agree that these facts are enough to

create a reasonable suspicion, based on objective, articulable facts, that a crime was being committed. Significantly, the Court never identifies exactly what crime the officers thought Mr. Atlas was committing. They had no idea whether he was a felon or not, and possession of a gun, in itself, is not a crime. (Indeed, though the right to bear arms is not absolute, it finds explicit protection in the Bill of Rights.) Mr. Atlas did not make the slightest move to threaten or menace the officer. Further, though the bag clearly contained something heavy enough to make a thud, I can't see what reason there was to believe that that something was a gun. The previous incident, in which Officer Reimer had discovered a gun in a similar bag, had nothing to do with Mr. Atlas.

I don't have a front porch, or much of a front yard, but I do have a front door, and I suspect that I would look surprised if I should open my door and see a police officer standing there, on my property, without prior notice. When asked what was in the bag, Mr. Atlas said "nothing," but surely it was unreasonable to take this statement literally. Obviously something was in the bag: the statement that "nothing" was in it was simply a colloquial way of saying that the bag contained nothing significant. When someone asks me what I am doing, and I say "nothing," it is not reasonable to take me literally. I am doing something, even if only breathing. The answer means simply that I am not doing anything of importance.

Some emphasis is laid on the fact that the neighborhood "was high in gang activity." Ante, at 2. We should remember that people who live in such neighborhoods are probably the most frequent victims of such activity. I do not believe that they should indiscriminately be considered dangerous. It would be just as reasonable to infer that Mr. Atlas, assuming he did have a gun, had it lawfully for his own protection. If this search is to be upheld, it would have to be, in my view, on the theory adopted by

the District Court, that the officer had a reasonable apprehension of danger to himself. (The District Court did not find that the officers had an objectively reasonable suspicion that Atlas was committing a crime.) Perhaps it should be the law that officers may search citizens whenever they feel endangered for any reason. I do not think that is the law now. Nor do I believe that the officer's apprehension of danger in this case was sufficiently grounded to satisfy the <u>Terry</u> standard.

In short, I believe the motion to suppress should have been granted. I would therefore reverse this conviction and remand for further proceedings. On this view of the case, it is unnecessary for me to express an opinion on the sentencing issue decided by the Court.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.