**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                              No. 97-4974

CURTIS L. WARD,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CR-97-109)

Submitted: June 23, 1998

Decided: August 3, 1998

Before WIDENER and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Joseph W. Kaestner, KAESTNER & PITNEY, P.C., Richmond, Virginia, for Appellant. Helen F. Fahey, United States Attorney, Cameron Heaps Macaulay, Special Assistant United States Attorney, Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

A jury convicted Curtis Lee Ward of possession of marijuana in violation of 21 U.S.C. § 844 (1994), using and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C.A. § 924(c) (West Supp. 1998), and possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C.A. § 922(g)(1) (West Supp. 1998). He was sentenced to 101 months' imprisonment and three years of supervised release. On appeal, Ward contends that the district court erroneously denied his motion to suppress the evidence, and he claims that the evidence at trial was insufficient to convict him under § 924(c). Finding no error, we affirm.

On February 25, 1997, three Richmond police officers were on patrol and discussing doing a "knock and talk" at Ward's home.[1] Three nights earlier, two of the officers, John O'Connor and Michael Musselwhite, had been called to the scene of an abduction and attempted robbery involving Ward. Ward and his girlfriend had been sitting in Ward's vehicle when several masked perpetrators attempted to rob Ward and abducted his girlfriend at gun point. On the night of the abduction, Ward stated that he believed "Kim Wills and his gang" had been the perpetrators. Ward also told Officer O'Connor that he believed that Wills thought that Ward had some money. The officers knew Wills as a mid-level drug dealer in Richmond; this knowledge, in conjunction with the facts surrounding the abduction and attempted robbery, gave rise to a suspicion in Officer O'Connor's mind that Ward may have had ties to a drug dealer.

_____

[1] A "knock and talk" is an investigative police procedure in which officers knock on a door, introduce themselves as police officers, and based on the observable reaction of the subject, the offices may seek permission to search the residence.

On February 25, the three officers were passing by Ward's home and noticed that he was coming out of his front door. Officer O'Connor walked through Ward's front yard and up onto the porch. As he approached, Officer O'Connor began casually speaking to Ward, who froze in place as soon as he noticed the officers. Officer O'Connor asked Ward whether his girlfriend had ever been found. Ward stated that she had been dropped off in another part of the city by the gunmen, and that she made it back to his house sometime later during the evening of the abduction. While observing Ward's behavior, Officer O'Connor also noticed that Ward was trembling and he began nervously looking back and forth. The officer also noticed several bulges in Ward's clothing, so he asked Ward if he had a gun. Ward said "yes," and then reached down towards the gun. At that point, Officer O'Connor handcuffed Ward and patted down Ward's clothing. The officer retrieved a loaded nine millimeter pistol with a round in the chamber, an extra loaded magazine, a cellular telephone, a pager, $2500 cash,[2] and two marijuana cigarettes from Ward's clothing.

Next, in response to Officer O'Connor's questions, Ward admitted that he had no concealed weapon permit and that he had been previously arrested. Officer O'Connor placed Ward under arrest and advised him of his Miranda rights. Ward then consented to a search of his house, in which the officers found another marijuana cigarette, razor blades, and baggies containing marijuana residue. The officers also found a Norinco assault rifle with a round in the chamber, two loaded magazines, plus a large amount of ammunition.

Ward was charged with possession of a controlled substance, using and carrying a firearm in relation to a drug trafficking offense, and being a felon in possession of a firearm and ammunition. He filed a motion to suppress all evidence seized from his person and his home, alleging that his Fourth Amendment rights were violated when the police trespassed upon his property without a warrant. After a hearing, the district court denied the motion to suppress. Ward was then tried by a jury and found guilty on all charges. He timely noted an appeal from the order of conviction.

_____

[2] Ward initially stated that the $2500 came from the sale of his vehicle, but later admitted that the money was proceeds from the sale of drugs.

When reviewing the district court's denial of a motion to suppress, this court reviews the district court's ultimate conclusion de novo, but its factual findings are reviewed for clear error. See United States v. Han, 74 F.3d 537, 540 (4th Cir.), cert. denied, 517 U.S. 1239 (1996); United States v. Williams, 10 F.3d 1070, 1077 (4th Cir. 1993). Ward argues that the officers had no legal basis for entering his property, and that the officers approached him on his porch in order to coerce his consent to a search of his home. However, this court has held that:

> [a]bsent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned violation of the person's right of privacy, for any one openly and peaceably . . . to walk up the steps and knock on the front door of any man's "castle" . . . whether the questioner be a pollster, a salesman, or an officer of the law.

United States v. Taylor, 90 F.3d 903, 909 (4th Cir. 1996) (quoting United States v. Hersch, 464 F.2d 228, 230 (9th Cir. 1972)). Although there was a fence around Ward's property, there were no signs posted to prohibit trespassing.[3] Further, when he saw the officers approaching, Ward could have, but chose not to, go back inside his home; rather, he participated in casual conversation with Officer O'Connor by answering his questions about the incident with Ward's girlfriend. Thus, because Ward gave no express orders to the officers refusing admittance to his property, we find that the officers were lawfully on Ward's front porch. See id. Accordingly, the district court did not err when the court denied the motion to suppress.[4]

Next, Ward argues that the evidence at trial was insufficient to sustain his conviction under § 924(c) because the Government failed to

_____

[3] It is not clear from the record whether there was a gate. However, there was no testimony that the gate, if any, was locked or latched.
[4] To the extent that Ward challenges the officers' questions regarding whether he was carrying a gun, and their decision to handcuff him for their own safety when they learned he had a gun, their actions were not improper. See United States v. Atlas, 94 F.3d 447, 450-51 and n.4 (8th Cir. 1996); United States v. Hassan El, 5 F.3d 726, 731 (4th Cir. 1993).

establish that he carried the firearm "during and in relation to" the drug offense. This court reviews sufficiency of the evidence deferentially, sustaining the verdict if the evidence, viewed in the light most favorable to the government, is such that a rational trier of fact could find guilt beyond a reasonable doubt. See Glasser v. United States, 315 U.S. 60, 80 (1942); see also United States v. Burgos, 94 F.3d 849, 862-63 (4th Cir. 1996) (in banc), cert. denied , ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 98-6868). To prove a violation of § 924(c), the Government must show that: "(1) [Ward] used or carried[5] a firearm, and (2) . . . did so during and in relation to a drug trafficking offense or crime of violence." United States v. Mitchell, 104 F.3d 649, 652 (4th Cir. 1997).

To establish that a firearm was carried "in relation to" the drug trafficking offense, the government must prove that the firearm had "`some purpose or effect with respect to the drug trafficking crime' and [that] its presence was not `the result of accident or coincidence." Id. at 654 (quoting Smith v. United States, 508 U.S. 223, 238 (1993)). "The firearm must facilitate, or potentially facilitate, the drug trafficking offense." Id. The Government established at trial that Ward was carrying a loaded 9 millimeter pistol, an extra loaded magazine, a cellular telephone, a pager, $2500 cash, which Ward admitted was the proceeds from drug sales, and two marijuana cigarettes. In addition, the officers found more marijuana, guns, razor blades, baggies containing marijuana residue, an assault rifle and a large amount of ammunition inside Ward's home. In light of this evidence, a rational trier of fact could find beyond a reasonable doubt that Ward was a drug dealer and that he was carrying the weapon to facilitate his trade. See Glasser, 315 U.S. at 80. Accordingly, we affirm Ward's § 924(c) conviction.

_____

**5** The indictment and the judgment order state that Ward used and carried a firearm during and in relation to a drug trafficking offense. When a jury returns a verdict on an indictment that charges several acts in the conjunctive, the verdict will stand if the evidence is sufficient to establish any of the acts charged. See Turner v. United States, 396 U.S. 398, 420 (1970). Thus, the Government only had to establish that Ward either used or carried the firearm during and in relation to a drug trafficking offense. See id.

5

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6