_____

No. 96-3647
_____

United States of America,   *
                            *
          Appellee,         *
                            *
     v.                     * Appeal from the United States
                            * District Court for the Southern
Joe Michael Robinson,       * District of Iowa.
also known as Ice Mike,     *
                            *
          Appellant.        *
                            _____

          Submitted: March 14, 1997
          Filed: July 10, 1997
                            _____

Before FAGG, Circuit Judge, HEANEY, Senior Circuit Judge, and
NANGLE,[*] Senior District Judge.
                            _____

NANGLE, Senior District Judge.

     Joe Michael Robinson appeals the district court's[1] denial
of his motion to suppress, claiming that evidence seized from
him and his subsequent confession stemmed from an unlawful stop
and search.  Appellant also challenges the sentence imposed by
the district court, claiming that the court misapplied the

_____

     [*] The HONORABLE JOHN F. NANGLE, Senior United States
District Judge for the Eastern District of Missouri, sitting by
designation.

     [1] The HONORABLE RONALD E. LONGSTAFF, United States District
Judge for the Southern District of Iowa.

Career Offender section of the federal sentencing guidelines.
We affirm.

## I. BACKGROUND

On September 12, 1995, agents of the Federal Anti-Gang Task Force initiated surveillance of the residence at 825 West 15th Street in Davenport, Iowa. They had a warrant for the arrest of Eddie Barnes, one of several residents of the house, for distribution of cocaine. The agents were aware that over the preceding several months approximately four search warrants had been obtained by the police for the house at 825 West 15th Street. The warrants were based upon controlled purchases of cocaine base that had been made from the residence. One of the agents knew that since June of 1995, the house had been in continual use as a location for the selling of crack cocaine. While Task Force Officers Michael Clary and Vernard Gillman were conducting surveillance at the residence, they observed what they believed was drug activity: cars drove up and parked on the street in front of the residence, someone would come to the car and make an exchange for something, or someone would get out of the car, walk to the house and return a short time later.

At about 2:34 p.m., appellant drove up to the residence, parked and walked towards the residence. From their vantage point, the agents could not see the front door of the house. Thus, they were uncertain if appellant actually went inside the house. Agent Gillman recognized appellant immediately as an

individual with a long criminal history, including arrests and convictions for drug crimes. Agent Langager was also familiar with appellant, having observed a previous drug transaction and having been advised by other police officers and one of his informants that appellant was a drug dealer. In addition, officer John Claeys had been told by an informant that appellant owed him an outstanding debt for drugs from a recent purchase. Appellant left the premises and drove away approximately two minutes after he arrived. Upon learning that appellant left so quickly after arriving, Agent Langager decided to have appellant's car stopped. Davenport Police Officers Sievert and Hanssen were waiting nearby in a marked squad car and agent Langager asked them to stop appellant's car because there was a strong possibility appellant possessed drugs. The officers followed appellant for several blocks and then activated the emergency lights on their vehicle and pulled appellant over. Sergeant Sievert saw appellant remove one or both of his hands from the steering wheel and drop them to his lap area. Appellant then appeared to be moving around in the front seat and hunching his shoulders toward his waist.

Sergeant Sievert approached the vehicle on the driver's side and asked appellant for his driver's license. Appellant appeared nervous and would not make eye contact with the sergeant. Based upon the information known to the officer at that time, i.e., that appellant had just left Barnes' residence after a brief visit, that drug transactions appeared to be taking place at the residence, that appellant was a known drug dealer, that appellant had been fidgeting in the front seat of

the car and moving his hands towards his lap and that appellant appeared nervous, Sergeant Sievert asked appellant to step out of the vehicle.  After appellant stepped away from the car, the officer told him to put his hands on the top of his head, as he was going to begin a pat-down search.  As appellant placed his hands on his head, his shirt came up revealing a portion of a plastic baggie sticking out of his waistband.  When asked what the item was, appellant initially said nothing; then, when asked again he said "Cocaine."  Officer Hanssen then pulled the plastic baggie out of appellant's waistband and saw what appeared to be cocaine base.

The officers arrested appellant and placed him in the back of their police car.  Agent Langager and Sergeant Dan Roach, a supervisor with the Federal Anti-Gang Task Force, arrived and advised appellant that he was in serious trouble considering his past history and the fact that they had found drugs on him. Appellant indicated that he wanted to help himself.  Appellant was taken to the headquarters of the Davenport Police Department where he was placed in an interview room.  Agents of the Federal Anti-Gang Task Force advised him of his constitutional rights, and appellant signed a form waiving those rights.  Appellant indicated that he wanted to cooperate to avoid being charged.  He was told by Agent Claeys and Sergeant Roach that they could not make a deal, but that they would inform the United States Attorney's Office of any cooperation he provided.  Appellant then admitted the cocaine base was his, that he had bought it from Eddie Barnes' brother,

Tyran Davis, and that he had purchased crack from Eddie Barnes in the past, which he sold to support his heroin habit.

On February 2, 1996, appellant was arraigned on a charge of possession with the intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and entered a plea of not guilty. On February 14, 1996, the government filed notice that appellant faced an increased penalty because of a prior felony drug conviction pursuant to 21 U.S.C. § 851. The presentence report concluded that appellant's criminal history made him a career offender under the Federal Sentencing Guidelines. Appellant filed a motion to suppress the evidence seized from his person after the stop and his confession. After a hearing, the district court denied the motion to suppress, finding there was reasonable suspicion to justify the stop of the vehicle driven by appellant. The district court further found that the police were justified in conducting a pat-down search of appellant at the time of the stop and that appellant's confession was not tainted by any illegality.

Appellant entered a conditional plea of guilty on May 2, 1996, reserving his right to appeal the adverse ruling on the motion to suppress. At sentencing, appellant argued that the court should use the unenhanced maximum sentence, 40 years, as the offense statutory maximum for purposes of the career offender guidelines. The court, however, used the enhanced maximum, life imprisonment, as the offense statutory maximum. The court gave appellant a reduction for acceptance of responsibility, which placed him at offense level 34, criminal

history category VI, sentencing range 262-327 months.  Because appellant had provided assistance to the government, the court granted the United States' motion for a reduction of sentence, reducing appellant's sentence by 65 months, for a final sentence of 197 months.

## II.  DISCUSSION

Appellant argues that the district court erred in concluding that the police had reasonable suspicion to stop and search him.  The existence of reasonable suspicion involves the application of law to facts, which we review de novo.  United States v. McMurray, 34 F.3d 1405, 1409 (8th Cir. 1994), cert. denied, 115 S. Ct. 1164 (1995).  Appellant does not challenge the factual findings of the district court.

A police officer may conduct a brief, warrantless stop of a person if he reasonably believes that person is involved in criminal activity.  Terry v. Ohio, 392 U.S. 1, 20-22 (1968). A reasonable belief must be more than an "inchoate and unparticularized suspicion or 'hunch'."  Id.  The officer must be able to "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."  Id. at 21.  The level of suspicion required to justify a stop is, however, "considerably less than proof of wrongdoing by a preponderance of the evidence" and must be evaluated under "the totality of the circumstances."  United States v. Sokolow, 490 U.S. 1, 7-8 (1989).  An officer may rely on information provided by other

officers and all of the information known to the team of

officers involved in the investigation to provide justification for a stop.  <u>United States v. O'Connell</u>, 841 F.2d 1408, 1418-19 (8th Cir. 1988), <u>cert</u>. <u>denied</u>, 488 U.S. 1011 (1989).

Based on the totality of circumstances in this case, the officers had a reasonable suspicion that appellant was involved in criminal activity.  They knew that appellant had been convicted of drug crimes in the past, they knew that the house where he stopped was a place where drugs were frequently bought and sold, they had observed drug activity at the house on the day of appellant's visit, they had received information from other sources that appellant had bought and sold drugs in the past and they saw appellant get out of his car, approach the house and return in about two minutes.  They also had reliable information from an informant that appellant had made a recent purchase of drugs.  All of this information created a reasonable and articulable suspicion that appellant had just engaged in a drug transaction.  Therefore, the district court's conclusion that the stop was justified was correct.

Once a vehicle has been lawfully stopped, an officer is authorized to "take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm."  <u>Terry</u>, 392 U.S. at 24.  Such measures may include a pat-down search for weapons if the officer reasonably believes that the person is armed and dangerous.  <u>Id</u>. at 27.  It is reasonable for an officer to believe that an individual may be armed and dangerous when that

-8-

individual is suspected of being involved in a drug transaction because "weapons and violence are frequently associated with drug transactions." <u>United States v. Brown</u>, 913 F.2d 570, 572 (8th Cir.), <u>cert</u>. <u>denied</u>, 498 U.S. 1016 (1990). <u>See</u> <u>also</u>, <u>McMurray</u>, 34 F.3d at 1410.

The officer who conducted the pat-down search in the present case had a reasonable suspicion that appellant had just purchased drugs and that he might be armed and dangerous. He was justified, therefore, in conducting a pat-down search of appellant in order to protect himself from possible violence. Further justification for the reasonableness of the officer's suspicion was the fact that appellant had taken his hands off the steering wheel and moved them towards his waist, the fact that he appeared nervous and the fact that he would not make eye contact. The district court properly concluded based on the totality of circumstances that a pat-down search was justified for the officer's protection.

Appellant also argues that the district court erred in holding that the enhanced statutory maximum penalty was the proper basis for applying the career offender guideline, USSG § 4B1.1, because Amendment 506[2] to § 4B1.1 is valid and

---

[2] Amendment 506 states:

> "Offense Statutory Maximum," for the purposes of this guideline, refers to the maximum term of imprisonment authorized for the offense of conviction . . . not including any increase in that maximum term under a sentencing enhancement provision that applies because of defendant's prior criminal record.

requires the use of the unenhanced statutory maximum. We review the district court's application of the guidelines de novo. United States v. Oehlenschlager, 76 F.3d 227, 229 (8th Cir. 1996). Appellant's argument has previously been addressed by this Court in United States v. Fountain, 83 F.3d 946 (8th Cir. 1996). In Fountain, we held that Amendment 506 is invalid because it conflicts with the plain language of 28 U.S.C. § 994(h), the Guidelines enabling statute. Id. at 951. Section 994(h) requires the Sentencing Commission to "assure that the guidelines specify a sentence to a term of imprisonment at or near the maximum term authorized" for an adult defendant convicted of a violent crime or enumerated drug offense who has at least two prior such convictions. Id. at 951. The Amendment conflicts with the plain language of the statute and is therefore invalid. Id. Appellant's argument that the district court erred in using the enhanced statutory maximum sentence was clearly rejected by this Court in Fountain and there is no reason to reconsider the issue.

## III. CONCLUSION

The district court's denial of appellant's motion to suppress was proper because the police had reasonable suspicion to stop and search appellant. The district court's use of the enhanced statutory maximum sentence as the basis for the application of the career offender guideline was also proper.

USSG § 4B1.1 commentary note 2 (1995).

Affirmed.


A true copy.

    Attest:


    CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.