# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-1175

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Missouri. |
| Emmanuel Jones, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  September 14, 1999

Filed:  October 13, 1999

_____

Before BOWMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges, and
BOGUE,[1] District Judge.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

A jury convicted Emmanuel Jones on three counts of being a felon in possession of guns and ammunition, see 18 U.S.C. § 922(g)(1), and one count of possessing an unregistered gun, see 26 U.S.C. § 5861(d).  Mr. Jones appeals, asserting that the trial court erred in refusing to excuse two venire members for cause after they expressed a belief that police officers are more credible than other witnesses, in admitting seized

---

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

guns and a confession into evidence, and in allowing rebuttal testimony regarding the ownership of the guns.

We agree with the trial court that the search that revealed the firearms and led to the confession was not unlawful, and that the rebuttal testimony was proper. We reverse the conviction, however, because one of the impaneled jurors was biased and should have been struck for cause.

## I.

When Mr. Jones brandished a sawed-off shotgun at St. Louis detectives who were assisting in the arrest of two other men, the detectives gave chase and apprehended Mr. Jones in an apartment building. The officers also seized the shotgun, which Mr. Jones had dropped, and an AK-47 rifle that they had noticed behind the screen door of the apartment building during their pursuit. In the process of conducting a protective sweep of the building, the officers obtained the consent of Demisha Rogers, an acquaintance of Mr. Jones, to search the apartment that she shared with her mother. That search uncovered several guns in the mother's bedroom closet. Mr. Jones later confessed to owning all of the guns.

Mr. Jones contends that but for the protective sweep and the search, both of which he asserts were unlawful, there would have been no discovery of the guns in question and no confession, and therefore that the guns and the confession should not have been admitted into evidence. The government maintains that the protective sweep was legally justified and that the search was conducted pursuant to a valid consent.

It seems to us that the protective sweep was permissible under the principles outlined in Maryland v. Buie, 494 U.S. 325 (1990). In that case, the Court held that the fourth amendment permits a protective sweep in connection with an arrest if an officer could have a reasonable belief, based on articulable facts, that the area to be swept might well harbor an individual posing a danger to those at the arrest scene. Id.

-2-

at 337. Since Mr. Jones brandished a shotgun, and the pursuing officers came across a rifle in the building into which he fled, we believe that the trial court was correct in holding that the officers could reasonably have been concerned for their safety. Mr. Jones's quick retreat into the building could reasonably have been construed as an effort to get help or to warn others, and the rifle could certainly have signaled to a reasonable mind the presence of another potential assailant.

We are not persuaded by Mr. Jones's argument that once he was arrested and the guns were seized, the officers had no further reason to feel endangered. There was still the reasonable possibility that other assailants could be inside the apartment building. In addition, the fact that the two immediately obvious guns had been confiscated did not necessarily mean that no additional guns were present in the building. Indeed, we believe that the presence of the two guns found (one a rifle and the other an illegally-modified shotgun) made a heightened case for the possibility that additional guns were on the premises. The fact that armed police officers were outside, on the other side of the building, also falls far short of eliminating the possibility of danger from armed assailants within the building. See United States v. Horne, 4 F.3d 579, 586-87 (8th Cir. 1993), cert. denied, 510 U.S. 1138 (1994).

## II.

We also believe that the search that the officers conducted was lawful because Ms. Rogers, who was living in the relevant apartment with her mother, consented to it. Mr. Jones maintains that the consent was not voluntary because Ms. Rogers was only eighteen years old and was holding an infant in her arms at the time that she spoke with the officers. The trial court specifically found, however (in adopting the proposed findings of a magistrate judge), that the officers did not employ threats or coercion when they asked for permission to search the apartment, and we see nothing clearly erroneous in this finding. It is well established that an adult co-occupant of a residence may consent to a search, see, e.g., United States v. Reeves, 730 F.2d 1189, 1193-94

(8th Cir. 1984), and we see nothing in the totality of the circumstances that compels us to find that Ms. Rogers's consent was involuntary.

Mr. Jones also contends that the trial court erred in allowing rebuttal testimony regarding the ownership of the guns in the bedroom closet. We find Mr. Jones's argument to be without merit, and if error was committed, moreover, it was harmless.

## III.

Mr. Jones argues that the trial court erred when it failed to excuse Juror No. 18 and Juror No. 27 for cause, after they expressed a belief that police officers are less likely to lie than other witnesses. We note at the outset that of the five jurors whom Mr. Jones challenged for cause, three were struck by the trial court. Mr. Jones later exercised all of his peremptory challenges, using one to strike Juror No. 18. Juror No. 27, however, ultimately sat on the jury.

Mr. Jones and the government differ on whether Juror No. 18 adequately rehabilitated herself during voir dire, but we need not decide this issue. We have held that there can be no reversible error if a defendant exercises a peremptory challenge to remove a juror who has been challenged for cause. See United States v. Cruz, 993 F.2d 164, 168-69 (8th Cir. 1993); see also United States v. Horsman, 114 F.3d 822, 825 (8th Cir. 1997), cert. denied, 118 S. Ct. 702 (1998).

We believe, on the other hand, that Mr. Jones demonstrated that Juror No. 27 was impermissibly biased. Mr. Jones points to an exchange during voir dire in which one juror stated that she tended to think that police officers are "less likely to be untruthful or lie than someone else." At that point, the defense asked if any other jurors agreed with the first juror. Juror No. 27 raised her hand and remarked, "Because of the oath and because of the office that they do hold and they do have respect in the community, ... I would tend to think that they would be doing the facts as they have seen them, so therefore I would think they would be truthful."

At the end of voir dire, Mr. Jones challenged both jurors for cause. The trial court struck the first juror, noting that she stated that she believed that police officers are "less likely to lie" than other members of the community. The trial court denied the challenge to Juror No. 27, however, intimating that she did not compare the credibility of police officers to that of other citizens, remarking that she simply indicated that the police would "tell the facts as they saw them," and holding that nothing in "the totality of her responses" justified excusing her for cause.

We review decisions denying challenges for cause for an abuse of discretion. See United States v. Amerson, 938 F.2d 116, 118 (8th Cir. 1991). We note, first of all, that we agree with the trial court's decision to remove the first juror, who believed that police officers are "less likely to be untruthful or lie than someone else." The credibility of the police officers played an important role in the government's case, and Mr. Jones was entitled to jurors who were not "predisposed to believe [that] the testimony of the officers is inherently more credible than that of other witnesses." Amerson, 938 F.2d at 118. It seems to us that the trial court should have struck Juror No. 27 for the same reason.

To begin with, Juror No. 27 identified herself when the defense asked if anyone shared the first juror's view that police are "less likely to be untruthful or lie than someone else." Juror No. 27's subsequent explanation for identifying herself, moreover, did nothing to rehabilitate her. In saying that she thought that it was relevant that police officers take oaths, hold public office, and command respect, she was describing qualities that she believed set police officers apart from others in the community. Average citizens do not take an oath to protect and serve, do not hold an office, and do not command exceptional respect in the community. The unmistakable inference is that Juror No. 27 would find the testimony of police officers inherently more credible than the testimony of other citizens.

Nor did Juror No. 27 say anything that might have rehabilitated her. She spoke on only one other occasion during voir dire, and that was simply to recite her occupation and marital status. It is true that at the beginning of voir dire, she did not respond to a question that the trial court posed with respect to whether anyone had a relative or close friend who was employed by a law enforcement agency and would, as a result of that relationship, give more or less weight to a law enforcement officer's testimony. But this question asked only if the members of the venire would be biased because of a relationship with a law enforcement officer, not for some other reason. Furthermore, the exchange between the defense and Juror No. 27 occurred subsequent to the general introductory question, and involved questions directly posed to her, in response to which she specifically indicated a bias favoring testimony by police officers. We note, finally, that the first juror did not respond to the general question either, yet the trial court found cause to excuse her.

The government notes that Amerson gives the trial court a choice when a juror expresses a bias in favor of testimony by police officers: The court may excuse the juror for cause, " 'or by instructions and additional questions convince the [juror] that there is no special credence due the testimony of [police officers],' " Amerson, 938 F.2d at 118, quoting United States v. Evans, 917 F.2d 800, 806 (4th Cir. 1990), overruled in part on other grounds, United States v. Lancaster, 96 F.2d 734, 736 (4th Cir. 1996) (en banc), cert. denied, 519 U.S. 1120 (1997). In our case, however, the trial court gave no additional instructions to, and asked no additional questions of, Juror No. 27 after she revealed her bias. All relevant instructions and questions from the trial court to Juror No. 27 during voir dire came prior to her statement of bias, and evidently did not convince her that no special credence is owed to the testimony of police officers.

Having concluded that the trial court erred in failing to strike Juror No. 27 for cause, we are required to reverse Mr. Jones's conviction. "Trying a defendant before a biased jury is akin to providing him no trial at all. It constitutes a fundamental defect in the trial mechanism itself." Johnson v. Armontrout, 961 F.2d 748, 755 (8th Cir.

1992); cf. Arizona v. Fulminante, 499 U.S. 279, 309-10 (1991). We note that the government makes no suggestion that the defense chose not to remove Juror No. 27 with a peremptory challenge for strategic reasons, that is, to build in error in the trial. Nor does the government argue that the error was harmless or that federal common law required Mr. Jones to use a peremptory challenge to remove Juror No. 27 or lose his right to object to her presence on the jury.

## IV.

Although we agree with the trial court that the seized guns and the confession were admissible into evidence, and that the rebuttal testimony in question was proper, we believe that the trial court improperly failed to strike Juror No. 27 for cause. Mr. Jones's convictions are therefore reversed and the case is remanded for a new trial.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.