# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1629

_____

United States of America,      *
                             *

         Appellee,     *

                             *         Appeal from the United States

     v.                       *         District Court for the

                             *         Southern District of Iowa.

Karen Elaine Cash, also known as     *

Karen Elaine Beisser,     *              [PUBLISHED]

                             *

         Appellant.

_____

Submitted: October 22, 2003
Filed: August 4, 2004

_____

Before BYE, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

After the district court[1] denied Karen Elaine Cash's motion to suppress evidence seized from her residence, she conditionally pleaded guilty to possessing methamphetamine with intent to distribute, reserving the right to appeal the denial of her suppression motion. The district court sentenced her to seventy-two months in prison and four years of supervised release. Cash appeals the district court's denial

_____

[1] The Honorable Ronald E. Longstaff, Chief Judge, United States District Court for the Southern District of Iowa.

of her motion to suppress, and for the reasons discussed below, we affirm the judgment of the district court.

I.

After an evidentiary hearing, the district court found the following facts to be true. On November 29, 2001, an unidentified caller telephoned the Des Moines Police Department and spoke to Officer Mike McBride. The caller reported that he had just picked up his child from 2765 NE 52nd Court, the residence of his child's babysitter, a woman named Karen. The caller advised that while in Karen's residence, he had seen a brick of white powder and a brick of what he believed to be marijuana. According to the caller, when he confronted her about the alleged drugs, Karen said she "had to make a living." Officer McBride called the Pleasant Hill Police Department and relayed this information to Officer Daniel Edwards. Edwards determined from his dispatcher that Karen Cash lived at the address in question and that there was a valid arrest warrant outstanding for Cash for violating a no-contact order. Edwards then relayed this information to Polk County Sheriff's Department Deputies Jeffrey Funaro and Matt Davenport.

Around 6:30 p.m., Edwards, Funaro, and Davenport traveled to Cash's residence. They knocked on the door, and Cash answered. Funaro told her that there was an outstanding warrant for her arrest, and she responded that her attorney had arranged for the warrant to be recalled. Funaro contacted his dispatcher to reconfirm the validity of the warrant. While Funaro awaited a response, he and the other officers monitored Cash as she located a copy of the document purportedly recalling the warrant, unsuccessfully attempted to contact her attorney, and made arrangements for someone to take care of her five-year-old daughter, who was present at the residence. Edwards saw Cash move a shopping bag behind the kitchen island so that it would be out of the officers' line of sight. Edwards noted that Cash was extremely nervous and continually interrupted herself when speaking to the officers.

2

After the officers had been at Cash's residence for about ten minutes, Funaro's dispatcher reconfirmed the validity of the arrest warrant. Funaro therefore disregarded the document Cash had proffered and told her that she would be taken into custody. Edwards then made a protective sweep of the residence. Based on his training and experience, he was concerned that because Cash was allegedly involved with large amounts of drugs, there could be someone else present at the residence who could pose a danger to the officers as they attempted to take her into custody.

Edwards walked through the residence's three bedrooms, laundry/utility room, living room, and kitchen. In plain view atop the kitchen island, Edwards saw what he believed to be marijuana, marijuana seeds, and marijuana stems. He asked Cash about this material, and she denied that it was marijuana. Edwards then retrieved a field-test kit from his car and returned to the kitchen island to test the material, which tested positive as marijuana. While conducting the field test, Edwards looked down toward his feet and saw the open shopping bag Cash had earlier concealed from the officers behind the kitchen island. In it, he saw a baggie containing what he believed to be more marijuana. The officers then arrested Cash, secured the residence, and obtained a search warrant. In executing the search warrant, the officers retrieved methamphetamine, marijuana, pills, a large amount of cash, items related to drug consumption and distribution, and a pistol.

Cash moved to suppress the evidence, challenging the protective sweep of her residence. Applying Maryland v. Buie, 494 U.S. 325 (1990), the district court upheld the validity of the protective sweep based on the anonymous tip that Cash possessed large quantities of white powder and marijuana, Cash's extreme nervousness in talking to the officers, her furtiveness in concealing the shopping bag, and Edwards's training and experience regarding the danger posed to officers when dealing with individuals involved with large drug quantities. Cash appeals the district court's denial of her motion to suppress.

II.

Cash does not contest the district court's factual findings, only its legal conclusion that the protective sweep was justified. We review this question of law de novo. See United States v. Boyd, 180 F.3d 967, 975 (8th Cir. 1999).

In Buie, six or seven police officers entered the defendant's residence to execute a warrant for his arrest. The defendant emerged from the basement and was taken into custody. One officer then entered the basement "in case there was someone else" present, and he seized evidence he found in plain view. 494 U.S. at 328. The Supreme Court held that this type of protective sweep is permissible without a search warrant or probable cause, noting that the officers' legitimate interest "in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack" is "sufficient to outweigh the intrusion such procedures may entail." Id. at 333-34. The Court required that there be "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene," the same level of suspicion required for a stop and frisk under Terry v. Ohio, 392 U.S. 1 (1968). Id. at 334. Applying this standard, we conclude that the district court correctly upheld the protective sweep of Cash's residence.

Cash's extreme nervousness toward the officers and her furtiveness in concealing the shopping bag from the officers were significant factors which we have previously held may establish reasonable suspicion for a Terry stop and frisk. See, e.g., United States v. Atlas, 94 F.3d 447, 451 (8th Cir. 1996) ("[m]ost significant[]" in establishing reasonable suspicion were the facts that the suspect's eyes grew wide when he saw the officer, he threw down a bag he was holding, he began to walk away, and he exhibited nervousness in responding to the officer's questions), cert.

denied, 520 U.S. 1130 (1997); United States v. Condelee, 915 F.2d 1206, 1210 (8th Cir. 1990) (reasonable suspicion was established by the suspect's "appearance, demeanor[,] and actions": her hands shook and her voice accelerated while talking to the officer, and she attempted to conceal the contents of her purse). We see no reason why this analysis should not be extended from the Terry context to the Buie context, given that the level of suspicion "is no more and no less than was required in Terry," see Buie, 494 U.S. at 334, and given that other circuits have identified an occupant's nervousness and furtiveness as factors justifying a protective sweep, see, e.g., United States v. Taylor, 248 F.3d 506, 514 (6th Cir.) (one factor justifying a protective sweep was the occupant's nervous demeanor), cert. denied, 534 U.S. 981 (2001); United States v. Meza-Corrales, 183 F.3d 1116, 1124 (9th Cir. 1999) (one factor justifying a protective sweep was the occupants' furtive actions).

Since an officer confronting a nervous and furtive suspect on the street has an articulable reason to be concerned for his safety and may therefore conduct a Terry stop and frisk, it follows that an officer arresting a nervous and furtive suspect in an unfamiliar residence has an articulable reason to be concerned for his safety and may therefore conduct a Buie sweep. See generally Buie, 494 U.S. at 333 ("The risk of danger in the context of an arrest in the home is as great as, if not greater than, it is in an on-the-street or roadside investigatory encounter. . . . [U]nlike an encounter on the street or along a highway, an in-home arrest puts the officer at the disadvantage of being on his adversary's 'turf.' An ambush in a confined setting of unknown configuration is more to be feared than it is in open, more familiar surroundings.")

It was also a significant factor that the officers had been advised that Cash was in possession of large quantities of drugs. In upholding a Terry stop and frisk, we have previously held that "[i]t is reasonable for an officer to believe that an individual may be armed and dangerous when that individual is suspected of being involved in a drug transaction because weapons and violence are frequently associated with drug transactions." United States v. Robinson, 119 F.3d 663, 667 (8th Cir. 1997) (quoted

5

source and internal marks omitted).  We have also previously noted that "[t]he possible danger presented by an individual approaching and entering a structure housing a drug operation is obvious.  In fact, it would have been foolhardy for an objectively reasonable officer not to conduct a [Terry] frisk under the circumstances." United States v. Patterson, 885 F.2d 483, 485 (8th Cir. 1989). Again, we see no reason why this analysis should not be extended from the Terry context to the Buie context.

Since an officer approaching a suspected drug trafficker in the open is justified in conducting a Terry stop and frisk out of concern that the suspect may resort to violence to thwart the encounter, it follows that an officer arresting a suspected drug trafficker in one room of a multi-room residence is justified in conducting a Buie sweep out of concern that there could be individuals lurking in the other rooms who may resort to violence to thwart the arrest.  See generally United States v. Horne, 4 F.3d 579, 586 (8th Cir. 1993) (upholding a Buie sweep because "[w]hen the law enforcement officers entered the house . . ., they had no way of knowing how many people were there"), cert. denied, 510 U.S. 1138 (1994).

## III.

In sum, the district court correctly concluded that a rational and prudent police officer could reasonably suspect that the residence harbored one or more potentially dangerous individuals based on (1) the tip that Cash possessed large quantities of drugs, coupled with Edwards's training and experience regarding the danger involved in dealing with individuals associated with large drug quantities; and (2) Cash's extreme nervousness in interacting with the officers and her furtive concealment of the shopping bag.  Accordingly, we affirm the judgment of the district court.

6

BYE, Circuit Judge, dissenting.

Because I believe the protective sweep impinged upon Cash's Fourth Amendment rights, I respectfully dissent.

The Fourth Amendment safeguards the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment allows limited protective sweeps as a precautionary measure in conjunction with in-home arrests. Maryland v. Buie, 494 U.S. 325, 337 (1990). A protective sweep is only permissible if the officer "possesse[d] a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others." Id. at 327 (internal quotation and citations omitted).

This court has consistently applied the Buie standard in cases posing the legal issue of the constitutionality of a protective sweep. See United States v. Boyd, 180 F.3d 967, 975 (8th Cir. 1999); United States v. Cunningham, 133 F.3d 1070, 1073 (8th Cir. 1998). While I agree with the majority that Buie and its progeny set forth the applicable test, I part ways as to its application. I agree with the majority's recitation of the facts, so I would reverse without disturbing the factual findings of the district court and without exploring any possible pretextual motivations on the part of the officers.[2] I do believe, however, the majority fails to give adequate weight to the full context of the interaction between Cash and the officers prior to the

_____

[2]In Whren v. United States, the Supreme Court stated "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." 517 U.S. 806, 813 (1996). See also United States v. Clayton, 210 F.3d 841, 844-45 (8th Cir. 2000) (finding the district court did not err in failing to suppress evidence on the grounds the police visit to Clayton's home was pretextual).

7

initiation of the protective sweep and the mitigating factors cutting against the reasonableness of the sweep.

In my view, there is only one factor in this case – the suspicion of drugs in the home – that could have contributed to a reasonable belief the area to be swept harbored an individual posing a danger to those at the arrest scene. In my mind this factor, when considered in view of the mitigating factors present, does not lay a foundation for a reasonable suspicion that Cash's trailer harbored an individual posing a danger to the officer or others. And I decline, as the majority would seemingly do, to create a bright line rule that "an officer arresting a suspected drug trafficker in one room of a multi-room residence is justified in conducting a Buie sweep out of concern that there would be individuals lurking in the other rooms who may resort to violence to thwart the arrest."

In reaching its conclusion, the majority points to two factors in addition to the suspicion of drugs in the home which it found contributed to a reasonable belief the area to be swept harbored an individual posing a danger to those at the arrest scene – Officer Edwards's breadth of experience and Cash's nervousness and furtiveness vis a vis the shopping bag. In my view these factors are insufficient to support a reasonable belief there were dangerous individuals at the arrest scene, and I will address them in turn.

First, the majority points to "the tip that Cash possessed large quantities of drugs, coupled with Edwards's training and experience regarding the danger involved in dealing with individuals associated with large drug quantities." As to Officer Edwards's experience, the district court relied on his testimony at the evidentiary hearing, during which he stated "[i]n my training and experience, individuals that are involved with large quantities of drugs have a very high potential of danger to officers when coming in contact with the police." United States v. Cash, No. 01-230, slip op. at 4 (S.D. Iowa April 2, 2002) (district court order). Edwards testified any

other individuals present in the trailer would pose a danger to the officers as they were taking Cash into custody, because a tipster had reported a large quantity of drugs to be in the house. Id. at 8.

Edwards has been a police officer for approximately ten years and has six years of experience as a narcotics investigator. He has been fired upon during his tenure as a narcotics officer, and has also had to discharge his weapon in defense against persons involved in the drug trade. The district court stated it was impossible to remove Officer Edwards's training and experience from "the matrix of facts that define the circumstances which must be considered." Id. (quoting Buie v. State, 580 A.2d 167, 170 (Md. Ct. App. 1990) (following remand from the United States Supreme Court)). The court reasoned Officer Edwards's lack of evidence to suggest there were other persons or weapons in the residence did not invalidate the sweep, so long as there were other articulable reasons to contribute to a suspicion of possible danger. Id. at 9.

The primary question presented on this appeal is whether Officer Edwards reasonably believed the area to be swept harbored an individual posing a danger to those at the arrest scene. In my view, the district court, in focusing on Officer Edwards's history as an officer, engaged in speculative theories about whether there could have been another individual in the house. These speculative theories did not support a reasonable belief the trailer home harbored an individual posing a danger to those at the arrest scene. Doubtless Officer Edwards's decisions are colored by his extensive history as a police officer during which he has encountered all manner of violent individuals and has had violence perpetrated against him, and I do not minimize his experience. Buie, however, rejected any notion of a bright-line rule authorizing a protective sweep in every in-home arrest for even violent crime. Buie, 494 U.S. at 334 n.2.

The protective sweep of a home requires more than a mere inchoate and unparticularized suspicion or hunch. See id. at 332. The fact police must be cautious of whether other persons are present in a home, even in a case where drugs may be present, does not alone justify a warrantless protective search. If this were the case, the police could sweep search a home in every instance where uncertainty exists as to the number of people in the residence, merely to rule out the possibility. Thus, I would conclude mere speculation some other person could be hiding cannot be elevated to a reasonable articulable belief of danger per Buie. In order to find Officer Edwards's protective sweep constitutional, Officer Edwards would need to possess a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted him in believing that the area swept harbored an individual posing a danger to the officer or others. See id., 494 U.S. at 327. Thus, I disagree with the district court and majority's reliance on Officer Edwards's training and experience regarding the danger involved in dealing with individuals associated with large drug quantities.

The district court and the majority also point to Officer Edwards's observations that Cash appeared nervous and repeatedly moved the shopping bag. In my view, in the context of this arrest, Cash's nervousness does not contribute to a reasonable belief based on specific and articulable facts which reasonably warranted Officer Edwards's belief that the trailer harbored a potentially dangerous individual. Cash's nervousness did not indicate the possible presence of other individuals in the trailer. Most individuals would be nervous when faced with a police presence in the home, and imminent arrest. Additionally, Officer Edwards claimed he waited outside for at least ten minutes witnessing nervous behavior by Cash – this admission means that for ten minutes Officer Edwards did nothing to respond to her nervous physical activity.

Also, the district court expressly concluded "Officer Edwards did not conduct the sweep to safeguard the officers against Ms. Cash, but rather, against other

individuals who may have been present and unseen." Id. at 9, n.4. This poses an internal inconsistency with the court's reliance on Officer Edwards's statement that Cash's nervousness, coupled with her repeated movement of the shopping bag, caused him to believe a protective sweep was prudent under the circumstances. It is undisputed Officer Funaro had already handcuffed and detained Cash at the time Officer Edwards commenced the protective sweep. If the district court specifically found Edwards did not conduct the sweep to safeguard against Ms. Cash, then I fail to see the significance of Cash's nervousness.

I believe the majority's Terry analysis of Cash's nervousness suffers from a similar defect as the district court's reliance on Ms. Cash's nervousness as justification for the protective sweep. The majority concludes "an officer arresting a nervous and furtive suspect in an unfamiliar residence has an articulable reason to be concerned for his safety and may therefore conduct a Buie sweep." I believe the situation of a protective sweep is distinct from a Terry stop. In a *Terry* stop the nervousness of the *person being stopped* is plainly relevant as an indicia of criminal activity, but in the case of the protective sweep nervousness on the part of the arrestee (in this case Cash) does nothing to support a reasonable suspicion there may be *another individual* in the home who could be of danger.

Further, I believe the circumstances in this case include numerous mitigating factors, despite the reported presence of drugs, which support a conclusion there was no reasonable, articulable belief there was a person or persons in Cash's mobile home who posed a danger to those at the scene. First, the fact officers allowed Cash the opportunity to call her mother to assume care of Cash's five-year-old daughter indicates there was no reason for the officers to believe another adult was present at the scene. The officers' conduct in waiting while Cash arranged for someone to care for her daughter is not at all consistent with them having a reasonable belief someone else was in the premises. Also, if the police had a reasonable belief there could be a

person other than Cash lurking in the home, one wonders why police did not remove the small child from the trailer and out of the way of potential harm.

Additionally, the officers' overall treatment of Cash confirms they did not consider her a threat. Cash was never frisked nor was she handcuffed for at least ten minutes. Cash was also permitted to roam freely around the trailer, and her interaction with the officers was apparently calm and relatively positive (despite her nervousness). Further, no officer drew a weapon for the ten minutes they were there before Edwards conducted the protective sweep. And the arrest warrant was for a violation of a civil no-contact order – not a criminal charge. Also, Deputy Funaro testified he lacked any information to suggest the presence of others. In addition, none of the officers checked the rear of the mobile home for their protection when they arrived. In sum, having carefully considered the facts and context of the arrest, I conclude there are not sufficient factors in this case to give rise to a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted Officer Edwards's belief the area swept harbored an individual posing a danger to the officers or others.

This conclusion is entirely consistent with controlling precedent of this court, for to my knowledge we have never upheld a sweep on so thin a foundation. This case is distinguishable from those cases in which this court has upheld protective sweeps as permissible, as those cases all include additional factors not present in this case. See United States v. Clayton, 210 F.3d 841, 842-43, 845 (8th Cir. 2000) (upholding search where police acted on a tip the home contained a methamphetamine laboratory and sawed off shotgun; officers immediately observed a gallon-sized pickle jar containing a liquid believed to be methamphetamine; defendant reached for a sawed-off shotgun; and several adults were present at the scene who were in plain view of the police); United States v. Boyd, 180 F.3d 967, 972-76 (8th Cir. 1999) (upholding a protective sweep where even though defendant had already been handcuffed at the time of the protective sweep (as in this case),

officers knew defendant was on parole for possession of narcotics and possession of a machine gun;[3] the officers observed a package of drugs and guns immediately upon opening the door; and they heard running footsteps and a flushing toilet; and these factors all combined to give the officers a reasonable belief there were others present who posed a danger); United States v. Walsh, 299 F.3d 729, 732-33 (8th Cir. 2002) (citing dangers of possible imminent explosion associated with clandestine methamphetamine lab); United States v. Brown, 217 F.3d 605, 607 (8th Cir. 2000) (relying upon specific, articulable factors of defendant's hesitation in responding to an inquiry of whether anyone else was in the house, officers' knowledge of criminal roommate, and multiple weapons recovered in prior arrest); United States v. Horne, 4 F.3d 579, 587 (8th Cir. 1993) (upholding protective sweep following a fast-paced entry to convict a fugitive where the officer conducting the sweep could reasonably have believed there were others in the house who had not yet been detained because there were four people present in a first-floor room and the officer did not know the rest of the house had been secured). Clearly, we have always required something more than the factors present in this case.

This case is also distinguishable from cases which may not have involved a suspicion of drugs, but did involve additional factors, not present in this case, reasonably suggesting the presence of danger to those at the arrest scene. See United States v. Jones, 193 F.3d 948, 949-50 (8th Cir. 1999) (upholding a protective sweep where defendant brandished a sawed-off shotgun at detectives and fled possibly to get help or warn others, and officers saw a rifle in the apartment building into which defendant fled which could have signaled the presence of either another potential assailant or other weapons); United States v. Blackshiers, 52 F.3d 331 (8th Cir. 1995)

_____

[3]Although Cash does have a criminal history, there is nothing in the record to indicate the officers were aware of her record or Officer Edwards relied upon her record as justification for the protective sweep.

(unpublished table decision) (upholding sweep where defendant said there was a shotgun in the basement and officers heard voices in basement).

Having carefully considered the facts and circumstances in this case, I believe Officer Edwards did not possess a reasonable belief, based on specific and articulable facts, that the area swept harbored an individual who posed a danger to the officers or others on the scene. The majority and the district court could not articulate legally sufficient facts in support of the protective sweep because the officers themselves could not identify them. The execution of an in-home arrest for a non-violent offense simply should not be used as a pretext to perform a protective sweep for evidence of another offense. See Buie, 494 U.S. at 335 n.3. I fear the majority's opinion serves to further whittle away valuable Fourth Amendment protections in this circuit, and I would reverse.

_____