

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-19-2005

# USA v. Childs

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-3359

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"USA v. Childs" (2005). *2005 Decisions.* Paper 1340.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1340

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-3359

UNITED STATES OF AMERICA

v.

STEPHEN ERIK CHILDS

Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

(Dist Court No. 02-CR-00778-2)
District Court Judge: Hon. Clarence C. Newcomer

Submitted Under Third Circuit LAR 34.1(a)
September 13, 2004

Before: SCIRICA, Chief Judge, ALITO, and AMBRO, Circuit Judges.

(Opinion Filed: April 19, 2005)

OPINION OF THE COURT

PER CURIAM:

Stephen Childs was convicted of possession of a Schedule I controlled substance with the intent to distribute, as well as conspiracy to distribute and to possess with intent to distribute. We affirm. Because we write for the parties only, we do not detail the facts of the case.

Childs challenges his conviction on three grounds. First, he argues that the law enforcement officers lacked reasonable suspicion for an investigatory stop of the limousine in which he had been riding.[1] He adds that even if the stop was proper, the officers violated the Fourth Amendment by searching the passenger compartment of the limo without a warrant. We disagree.

The officers had reasonable suspicion to believe that the limo was being used in a drug transaction. They knew that Childs had entered Celotto's residence at 2612 South Chadwick Street around the time when a man matching the description of Celotto's drug supplier had also entered the house. They further knew that Childs had exited the house

---

[1]Other courts have held that a defendant in a similar situation relinquishes a reasonable expectation of privacy in the limousine upon fleeing from it. See, e.g., United States v. Hurst, 228 F.3d 751, 758 n.3 (6th Cir. 2000) ("Where the record shows defendant expressly consented to the vehicle search, and clearly had the ability and opportunity to expressly withdraw his consent at any time but failed to do so, the officers were objectively justified in construing his flight not as a withdrawal of consent, but as an abandonment of his vehicle, whereby he relinquished any reasonable expectation of privacy in the contents of the vehicle"). We need not reach this issue of first impression in this Circuit, because the search was justified even assuming that Childs had such an expectation and did not abandon it.

escorted by a man whom Celotto described as his partner in drug trafficking. Celotto himself had told the agents that the drugs had arrived at roughly the same time that the limo arrived. Moroever, when the agents approached Childs, who was standing near the open rear passenger door of the limousine, he exhibited signs of panic. Soon thereafter, despite Agent Muhlberger's encouragement to stay put, Childs fled. Taken together, these facts provided a basis for a reasonable suspicion that the limo was being used in a drug transaction. See Illinois v. Wardlow, 528 U.S. 119, 124-25 (2000). Accordingly, the agents were justified in searching the areas of the passenger compartment of the limo where guns might be hidden.[2] At the time of this search, several individuals found in the limo were being detained nearby, and the agents were justified in fearing that, if there were weapons in the limo, these individuals might "break away from police control and retrieve a weapon from [the] automobile." Long, 463 U.S. at 1051. The officers were justified in looking into the shopping bag, since it too could have contained a weapon. Thus, the search of the limo was legal.

---

[2]See Michigan v. Long, 463 U.S. 1042, 1049 (1983) ("the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons" (citation omitted)); United States v. Robinson, 119 F.3d 663, 667 (8th Cir. 1997) ("it is reasonable for an officer to believe that an individual may be armed and dangerous when that individual is suspected of being involved in a drug transaction because weapons and violence are frequently associated with drug transactions" (citation and internal quotations omitted)).

Childs next claims that the District Court erred when it refused to dismiss his indictment because of the destruction of the tape. Again, we disagree. "[S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). However, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988). Furthermore, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-110 (1976).

Here, the District Court found that the audio tape contained only music and background noise. It further found that the government believed the tape had no exculpatory evidence and, in good faith, returned it to Paseuth (its rightful owner). Only then was the tape destroyed by accident in a flood. These factual determinations are not clearly erroneous as they are based on the testimony of both an agent and Paseuth. Thus, Childs fails to establish both bad faith and materiality, and his Brady claim must fail.

Finally, Childs cannot prevail on his claim that the District Court erred in refusing to give his requested jury instruction on "innocent intent." This proposed instruction inaccurately stated that Childs could not be found to possess the intent needed for conviction if, as he claimed, he participated in the drug transaction "so that he could gain

4

further knowledge into the distribution of Ecstasy in Philadelphia and that he could then work as an informant for a law enforcement agency." A District Court should accept a proposed jury instruction when it is legally accurate, supported by the evidence, and not otherwise substantially covered by other instructions. United States v. Pitt, 193 F.3d 751, 755-56 (3d Cir. 1999). A refusal to grant such an instruction "must be evaluated in light of the totality of the circumstances – including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors – to determine whether the defendant received a constitutionally fair trial." Kentucky v. Whorton, 441 U.S. 786, 789 (1979).

Here, the District Court did not err. The District Court gave correct instructions regarding the intent needed for conviction under the statutes in question, and there is no authority for the proposition that the federal drug laws allow a private individual, acting solely on his own, to engage in the drug trade so long as the individual does so as part of a private investigation of drug activities. Consequently, the District Court properly refused to give the requested instruction.

By letter dated March 7, 2005, Childs stated that he is challenging his sentence in light of the Supreme Court's recent decision in United States v. Booker, 543 U.S. __, 125 S. Ct. 738 (2005). Having determined that issues with respect to Booker are best determined by the District Court in the first instance, we vacate the sentence and remand for resentencing in accordance with that opinion.